Joseph BAILEY et al.

v.

**BLOUNT COUNTY BOARD
OF EDUCATION et al.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 4, 2009 Session.

Jan. 28, 2010.

Robert N. Goddard, Maryville, Tennessee, for the appellants, Blount County Board of Education and Alvin Hord.

Kevin W. Shepherd, Maryville, Tennessee, for the appellees, Joseph Bailey and Pamela Bailey.

Charles W. Cagle and Jason M. Bergeron, Nashville, Tennessee, for amicus curiae, The Tennessee Organization of School Superintendents.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., GARY R. WADE, and WILLIAM C. KOCH, JJ., joined. SHARON G. LEE, J., not participating.

We granted permission to appeal in this case in order to address whether the plaintiff, Joseph Bailey, was afforded adequate due process in conjunction with his dismissal from his position as a nontenured, nonlicensed, classified teaching assistant at Heritage High School. We hold that he was. However, because that issue is not dispositive of the majority of claims brought by Bailey in this action, the trial court's grant of summary judgment and dismissal of the entire case was incorrect. Accordingly, we reverse in part the judgment of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

### Factual and Procedural Background[1]

This lawsuit arose out of a dispute surrounding plaintiff/appellee Joseph Bailey's

---

1. We have gleaned much of the factual back- ground of this case from exhibits attached to

dismissal from his employment at Heritage High School in Blount County, Tennessee. Bailey was employed by the Blount County School System under a one-year contract as a classified, nontenured, nonlicensed teaching assistant. Bailey did not provide instruction but was in charge of the in-school suspension program at Heritage High School. Bailey worked under the jurisdiction of the Director of Schools, defendant/appellant Alvin Hord.

In his position as supervisor of the in-school suspension program, Bailey had occasion to communicate with students who were facing personal challenges. According to Bailey, these students felt comfortable confiding in him, and he attempted to give them advice about their problems. In January 2006, a female student filed a sexual harassment complaint against Bailey. She claimed that Bailey, using vulgar language, asked her questions about her pregnancy and her sex life. Dr. Jane Morton, the school system's complaint manager, investigated the matter. According to Dr. Morton, Bailey concurred with the date and nature of the conversation but denied making specifically inappropriate comments.

Following Dr. Morton's investigation and report to Director Hord, Hord wrote Bailey a letter dated March 10, 2006, concerning this complaint of "inappropriate remarks to a female student." This letter recites that Bailey admitted to the remarks and informs Bailey that he will be suspended without pay for ten days beginning March 20, 2006. The record contains no response by Bailey to this letter, and

Bailey has not asserted to this Court that he responded to it at that time. After completing his suspension, Bailey apparently completed that school year and was re-employed on a new one-year contract for 2006–2007.[2]

On November 1, 2006, a female Heritage High School teacher filed a sexual harassment complaint against Bailey on the basis of an email she received from him commenting on her physical appearance in jeans. In response to the complaint, Director Hord sent Bailey a letter dated November 1, 2006, notifying Bailey that he was suspended with pay as of November 2, 2006, "pending the outcome of an investigation into a complaint of sexual harassment and inappropriate behavior filed against [him] on 11–1–2006 by a teacher at Heritage High School." The letter also informed Bailey that "[i]n accordance with Policy 5.202 [he would] be given an opportunity to respond to the complaint," and would "receive a written decision at the conclusion of the investigation, along with notice of the appeal process (Policy 5.202)." Director Hord referred the complaint to Dr. Morton for investigation.

On November 10, 2006, Dr. Morton wrote Bailey a letter informing him of the process that would be followed in investigating and resolving the complaint. This letter recites that, "[i]n accordance with Board of Education Policy 5.202 you have the opportunity to respond to this complaint, which includes the original documents you received on 11–2–2006 and the enclosed documents, which were found during the investigation."[3] The letter re-

---

an affidavit submitted in support of the defendants/appellants' motion for summary judgment. No dispute as to the accuracy of these exhibits has been raised.

**2.** The record does not contain a copy of any of Bailey's contracts with the Blount County School System.

**3.** Additional emails were provided by another female teacher to whom Bailey had mentioned the sexual activities of several students. One of these emails includes a graphic discussion of the perils of excessive masturbation, referring in particular to a specific student. In another email, Bailey reports that "after

quests that, if Bailey chose to respond to the complaint, he do so in writing. The letter concludes as follows:

Upon receipt and review of your response I will meet with Mr. Hord to present the complaint, the additional documentation from the investigation, your written response, and any findings from the investigation. Mr. Hord will make any recommendations about your job placement, and you will be notified of those recommendations, along with notice of the appeal process. Absent any written response from you by 11–17–2006, a decision will be made based upon the information provided to us by the complainant.

Policy 5.202, referenced in both Director Hord's and Dr. Morton's letters, provides that

[t]he director of schools may dismiss any classified employee . . . during the contract year for incompetence, inefficiency, insubordination, improper conduct or neglect of duty.

The director of schools may either choose to provide the employee with a hearing or give the employee the opportunity for a hearing before the Personnel Hearing Authority. Requests for hearings must be filed in writing with ten (10) days of notification.

Policy 5.202 further provides that, following a hearing before a Personnel Hearing Authority and the Authority's decision, "[t]he employee may appeal the decision to the Board within ten (10) working days of the Personnel Hearing Officer rendering the written decision to the employee."

Following these letters, which notified Bailey in writing of the complaint against him, Bailey obtained legal counsel and, through his lawyer, obtained an extension of time for his written response. Bailey's lawyer subsequently wrote a letter to Director Hord, dated November 29, 2006, and delivered via facsimile, which set forth Bailey's response to the complaint. Regarding the specific email which triggered the November investigation, the letter states, among other things, that, "[i]n retrospect, the e-mail may not have been in good taste when taken in isolation, but it clearly does not rise to the level of unprofessional or inappropriate conduct of a sexual harassing nature." Regarding the additional emails, the letter asserts their irrelevance to the original complaint and makes no substantive response. The letter requests an "opportunity to be heard on this matter before any disciplinary measures are taken."

Also on November 29, Dr. Morton sent a memo to Director Hord in which she recited the results of her investigation. The memo states that her findings

support the charge of improper conduct for the following reasons:

1) Mr. Bailey's behavior (including an email) toward a female teacher (the complainant) created an uncomfortable work environment, although the email itself does not specifically meet the definition of sexual harassment. In this email Mr. Bailey made inappropriate remarks about another female teacher.

2) Mr. Bailey named *specific students* in his emails to another teacher, and described sexual activities of those students, which he stated had been disclosed to him.

The memo concludes with Dr. Morton's recommendation that Bailey be dismissed from employment with Blount County Schools.

several hard-core (and I swear, it was XXX hard-core) discussions with me[,] [an identi-

fied female student] decided to stop all sexual activity over the summer."

On November 30, 2006, Director Hord sent Bailey a letter containing the following:

I have reviewed the information from a recent investigation into a complaint of sexual harassment and inappropriate conduct filed against you by a teacher at Heritage High School. I have also reviewed documents obtained in the course of that investigation (emails between you and another teacher at Heritage High School). In addition, I have read the letters I received from [your lawyer] regarding his legal representation.

Findings from the investigation support the charge of improper conduct for the following reasons:

Your behavior (including an email) toward a female teacher created an uncomfortable work environment, although the email itself does not specifically meet the definition of sexual harassment.

You used school email to correspond with another female teacher, in which you named *specific students* and described sexual activities of those students, which you state had been disclosed to you.

You are dismissed from employment with Blount County Schools as of this date, for improper conduct.

Board of Education Policy 5.202 provides the opportunity for you to request a hearing before a Personnel Hearing Officer. Under the policy you have the right to be represented by counsel; call and subpoena witnesses; examine all witnesses and require that testimony be given under oath. Requests for a hearing must be filed in writing within ten (10) days of this notification.

On December 5, 2006, counsel for Bailey sent Director Hord a letter "as official and written request pursuant to the policies of Blount County Schools for Joey Bailey to have a hearing in regards to your decision to terminate his employment." The letter makes no claim that Bailey was entitled to any particular hearing prior to his dismissal.

On January 9, 2007, an administrative personnel hearing ("the Full Hearing") was convened before personnel hearing officer Martha Haren McCampbell, an attorney ("the Personnel Hearing Authority"). Bailey's attorney was present and actively participated in this hearing. Bailey did not appear and his absence was explained only as follows:

MS. McCAMPBELL: It is ten after 10:00, and by agreement, Counsel, this [hearing] is to start at 10:00. Is that correct; Gentlemen?

MR. GODDARD [counsel for Director Hord and the Blount County Board of Education]: That is correct.

MR. SHEPHERD [counsel for Bailey]: Yes.

MS. McCAMPBELL: And Mr. Bailey at this point cannot be located; is that correct?

MR. SHEPHERD: That's correct.... I just received—I've had my phone on. I've got a message from my office. If I can check that while the court [sic]—

MS. McCAMPBELL: We'll take a recess.... We'll take a break and you can check your voice mail.

(WHEREUPON, A BREAK WAS TAKEN.)

MS. McCAMPBELL: We'll go back on the record. Mr. Shepherd, do you know where your client is?

MR. SHEPHERD: All I can say, ... based on the phone message I just received from my office, my client has expressed lack of confidence in this hearing and has chosen not to be here. But I am ready to proceed on his behalf.

I think I have to do so in order to protect his interest.

Bailey's lawyer did not argue to the Personnel Hearing Authority that the Full Hearing should have been provided prior to Bailey's dismissal, or that it should be continued because of his client's absence. Instead, he participated fully in the proceeding, including cross-examining the School Board's witnesses. Following the Full Hearing, the Personnel Hearing Authority upheld Bailey's termination for improper conduct; this decision was communicated via a letter dated January 18, 2007 to Bailey in care of his lawyer.

By letter dated January 31, 2007, Bailey's attorney notified Director Hord that, pursuant to Policy 5.202, Bailey was "appealing the decision of the personnel hearing officer to the school board." Return correspondence dated February 20 confirmed a board hearing set on February 28; a subsequent February 22 letter changed the start time but not the date.

On February 26, 2007, Bailey's attorney wrote a letter to counsel for the Blount County Board of Education ("the BCBOE") stating that Bailey was dismissing his appeal and was instead going to file "a Complaint with the court system." Bailey's lawyer explained in the letter that "[a]n appeal of this matter does not seem advisable ... at this time, especially based upon your previous correspondence to me that no new evidence would be accepted." Again, this letter makes no complaint about the process that had occurred to that point.

On February 28, 2007, the BCBOE met and declared Bailey's appeal dismissed upon Bailey's request. On March 9, 2007,

Bailey[4] filed a complaint against the BCBOE and Director Hord ("Defendants") in the Circuit Court for Blount County, Tennessee, concerning both his March 2006 suspension and his November 2006 dismissal. The original complaint contains the following "causes of action": (1) that Defendants conspired to deny Bailey his state and federal due process rights; (2) that Defendants defamed him; (3) that Defendants invaded Bailey's privacy by casting him "in a false light to the public"; (4) that Defendants "violated the Federal Invasion of Privacy Law" by intercepting Bailey's emails; (5) that Defendants "engaged in both intentional and negligent infliction of emotional distress"; (6) that, in connection with dismissing him, Defendants denied Bailey his right to free speech "by attempting to prohibit him from having any conversation with students or other teachers about the matters identified herein"; (7) that Defendants' actions caused Bailey "stress, anxiety, sleeplessness, and a loss of his employment opportunity"; and also (8) "caused pressure on" and "shame and emotional distress" to Bailey's wife; and (9) that Defendants' actions have "jeopardized" Bailey's efforts to obtain his "alternative teachers certificate," thereby impairing "his ability to earn."

On March 26, 2007, Defendants jointly filed a motion for summary judgment against Bailey on the entire complaint, which Defendants described as "essentially based upon the wrongful termination of the contract of employment" between Bailey and Defendants. As the basis for their motion, Defendants asserted that Tennessee Code Annotated section 49–2–301(b)(1)(GG)(iii)[5] and Policy 5.202 re-

---

**4.** Pamela Bailey, Bailey's wife, joined as plaintiff in the complaint. We refer to Bailey in the singular primarily for ease of reading.

**5.** This statute provides that "[a]ny [dismissed] nontenured, *licensed* employee desiring to appeal from a decision rendered in favor of the school system shall first exhaust the adminis-

quired that Bailey first exhaust all of his administrative remedies prior to filing litigation grounded in the termination of his employment. Defendants asserted in their motion that Bailey "appealed the decision of the Hearing Officer but dismissed the appeal to the School Board and, therefore, did not exhaust his administrative remedies prior to the time of filing litigation." The motion concludes with the assertion that Bailey (and his wife) "can have no cause of action based upon the wrongful termination of employment because ... Bailey failed to exhaust his administrative remedies." As required by Tennessee Rule of Civil Procedure 56.03, Defendants also filed a Statement of Material Facts.

On April 25, 2007, Bailey filed a "Response to Defendant's Statement of Material Facts" in which he admitted that he was "given an opportunity for a full and complete hearing." For the first time, however, he also alleged that the Full Hearing was not "in compliance with the requirements of the law because the hearing was provided after his termination from employment and not before his termination from employment." This pleading also asserts that the "administrative remedies ... imposed by law first require that the School Board have offered ... Bailey a full and complete hearing before his termination" and that "[i]nasmuch as [Defendants] did not offer a hearing before his termination, the requirement for exhaustion of administrative remedies would not be relevant."

Also on April 25, 2007, Bailey filed a response to the motion for summary judgment. This pleading points out that the motion refers only to Bailey's termination while his complaint refers to both his termination and his prior suspension. The pleading also refers to Tennessee Code Annotated section 49–2–301(b)(1)(GG)(i) for the proposition that he was entitled to a full and complete hearing prior to his dismissal.[6] On the basis of these points, Bailey asserted that summary judgment should be denied.

The next day, April 26, 2007, Bailey (and his wife) filed a pleading titled "Amend Complaint." In this pleading, Bailey sought to add a claim for "wrongful discharge from his employment," again citing to Tennessee Code Annotated section 49–2–301(b)(1)(GG)(i). The pleading asserts that it is permitted automatically "based upon the Defendants['] failure to file an Answer by this time." The record before this Court contains no additional response or any other pleadings.

On May 4, 2007, the trial court entered an order granting Defendants' motion for summary judgment. The order provides as follows:

This matter came on ... for hearing on the Motion for Summary Judgment with the Affidavit and Statement of Undisputed Material Facts filed by the Defendants, the Plaintiffs' response and accompanying Affidavit and Plaintiffs'

trative remedy of appealing the decision to the board of education within ten (10) working days of the hearing officer rendering written findings of fact and conclusions to the affected employee[.]" Tenn.Code Ann. § 49–2–301(b)(1)(GG)(iii) (2009) (emphasis added). Bailey is not a licensed employee.

6. This statute provides that "no nontenured, *licensed* employee under the director's jurisdiction shall be dismissed *without first having been given,* in writing: (a) Notice of the charge or charges; (b) An opportunity for a full and complete hearing before an impartial hearing officer selected by the [school] board; (c) An opportunity to be represented by counsel; (d) An opportunity to call and subpoena witnesses; (e) An opportunity to examine all witnesses; and (f) The right to require that all testimony be given under oath." Tenn.Code Ann. § 49–2–301(b)(1)(GG)(i) (emphases added). Bailey is not a licensed employee.

response to Defendants' Statement of Undisputed Material Facts, and upon the argument of counsel, from all of which the Court finds that the Motion for Summary Judgment is well taken and sustained.

It is, therefore, further ORDERED, ADJUDGED and DECREED that this cause is hereby dismissed with full prejudice to all Defendants[.]

The order makes no reference to Bailey's "Amend Complaint" pleading or to the "wrongful discharge" cause of action sought to be added thereby. The record does not contain a transcript of the hearing on Defendants' motion for summary judgment. The trial court subsequently assessed sanctions against Bailey pursuant to Tennessee Rule of Civil Procedure 11.03 on its determination that Bailey's lawsuit was frivolous.[7]

Bailey appealed. The Court of Appeals reversed the trial court on the basis that Director Hord did not provide Bailey with the hearing referred to in Tennessee Code Annotated section 49–2–301(b)(1)(GG)(i) prior to terminating him. The intermediate appellate court determined that, in his November 30, 2006 letter, Director Hord *simultaneously* terminated Bailey and notified Bailey of his right to such a hearing. The Court of Appeals likened Director Hord's action to "calling 'Timber' after the tree has already hit the ground," and determined that "the November 30, 2006, ruling of the Director of Schools terminating Mr. Bailey's employment was void ab initio." *Bailey v. Blount County Bd. of Educ.*, No. E2007–01028–COA–R3–CV, 2008 WL 3982911, at *5, *6 (Tenn.Ct.App. Aug.27, 2008). The Court of Appeals also vacated the trial court's imposition of sanctions.[8]

Defendants sought this Court's permission to appeal, which we granted. Defendants are joined by The Tennessee Organization of School Superintendents as amicus curiae in arguing that the trial court's grant of summary judgment was correct and that Bailey also should be found to have waived his argument that he was not timely provided the Full Hearing.

## STANDARD OF REVIEW

■ This case has been appealed from the trial court's grant of summary judgment to Defendants. A trial court may properly grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [filed in support of and in opposition to the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because a trial court's grant of summary judgment is a matter of law, our review of the trial court's judgment is de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn.2008).

## ANALYSIS

### I. Introduction: Applicable Law

The primary issue discussed by the parties in this appeal concerns the procedure

---

7. In its ruling from the bench on this issue, the trial court found that Bailey was aware that he was required to exhaust his administrative remedies prior to bringing suit "and that it is unfair and unjust for the taxpayers of Blount County to pay any litigation fee involved. That's the reason the Court seeks to sanction" Bailey.

8. On alternative grounds the Court of Appeals affirmed the trial court's summary dismissal of the claims regarding Bailey's March 2006 suspension. Bailey has not appealed from this ruling, and we thus do not have before us any questions about that claim. This portion of the Court of Appeals' judgment is therefore affirmed.

that a school director must follow in dismissing a nontenured, nonlicensed teaching assistant employed on a one-year contract as a classified employee of the Blount County School System. Given some confusing language in the applicable statutes and what appears to be some confusion by the parties and amicus curiae in determining the correct procedure and applicable law, we deem it appropriate to identify first the statutory and regulatory scheme that applied to Bailey in this case.

### A. Statutory Provisions

As explained by Tennessee's Office of the Attorney General, Tennessee state education statutes

> divide local education employees into two major groups: certificated and non-certificated. Certificated employees (also referred to as "licensed personnel") are those with a Tennessee teacher's professional license or certificate, and include teachers, principals, supervisors, and directors of schools. This group of employees is comprised of two subgroups: tenured and non-tenured. Non-certificated employees, in turn, comprise all other school employees such as food service workers, *teaching assistants,* custodial staff, etc.

Op. Tenn. Att'y Gen. No. 07–117, 2007 WL 2819327, at *1 (Aug. 8, 2007) (footnote omitted) (emphasis added). Joseph Bailey is a nontenured, noncertificated (nonlicensed) employee.

Tennessee Code Annotated section 49–2–301(b)(1)(FF) (2009) provides in part that "[a]ll persons who are employed in a position for which no teaching license is required shall be hired on a year-to-year contract." Additionally, section 49–2–301 authorizes each local board of education to employ a director of schools, *id.* at (a), and authorizes the director to "employ, transfer, suspend, nonrenew and dismiss all

personnel, licensed or otherwise," *id.* at (b)(1)(EE). Director Hord therefore had the statutory authority to both "nonrenew" Bailey's one-year contract and to dismiss him. A decision to "nonrenew" required only that Hord give Bailey "fifteen (15) days' notice of nonrenewal of the contract before the end of the contract period." *Id.* at (b)(1)(FF). Director Hord's authority to dismiss Bailey during the contract term was limited, however, to Bailey's "incompetence, inefficiency, insubordination, improper conduct or neglect of duty." *Id.* at (b)(1)(GG)(i).

Under the statute, a school director may dismiss a *nonlicensed* employee like Bailey for cause "*after* [merely] giving the employee, in writing, due notice of the charge or charges and *providing a hearing.*" *Id.* (emphases added). Unlike its provisions for licensed employees, however, the statute does not specify the characteristics of the "hearing" to which a nonlicensed employee is entitled prior to his or her dismissal.

By its structure, subdivision (GG)(i) clearly contemplates a difference between the pre-termination procedures afforded nonlicensed employees and those provided to licensed employees. The statute provides that a school director

> may dismiss *any* employee under the director's jurisdiction for incompetence, inefficiency, insubordination, improper conduct or neglect of duty, *after* giving the employee, in writing, due notice of the charge or charges and *providing a hearing; provided,* that no nontenured, *licensed* employee under the director's jurisdiction shall be dismissed *without first having been given,* in writing:
>
> (a) Notice of the charge or charges;
>
> (b) An opportunity for a full and complete hearing before an impartial hearing officer selected by the board;

(c) An opportunity to be represented by counsel;

(d) An opportunity to call and subpoena witnesses;

(e) An opportunity to examine all witnesses; and

(f) The right to require that all testimony be given under oath.

Tenn.Code Ann. § 49–2–301(b)(1)(GG)(i) (emphases added).[9] Were we to construe the "hearing" required by the first clause (applicable to nonlicensed employees like Bailey) to encompass the same features as the "full and complete hearing" required by the second clause (applicable to licensed employees only), we would be ignoring the plain distinction made by the statute.[10] Moreover, such a construction would render mere surplusage the first "hearing" referred to. This Court has long recognized its duty "to construe a statute so that no part will be inoperative, superfluous, void or insignificant." *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn.1975).

In addition to the introductory language of (b)(1) (which directs boards of education to assign certain duties to their directors), another provision of section 301 directs

that "[a]ll actions of the directors or their designees shall be consistent with the existing board policies, rules, contracts and regulations[.]" Tenn.Code Ann. § 49–2–301(b)(1)(HH). We therefore look next to the BCBOE policies to determine what authority has been granted specifically to the Blount County School Director in this situation and what rights have been given to the employee.

## B. BCBOE Policy 5.202

BCBOE Policy 5.202 is titled "Suspension/Dismissal of Classified Employees." It is undisputed that Bailey was a classified employee of Heritage High School. Policy 5.202 was therefore applicable to him and is the authority that Dr. Morton and Director Hord referenced in their correspondence with Bailey. Policy 5.202 provides in full as follows:

SUSPENSION

A director of schools/designee may suspend an employee at any time when deemed necessary. Before an employee is suspended s/he shall be: (1) provided with reasons for the suspension; (2) given an opportunity to respond; and (3)

**9.** Like its provisions regarding pre-dismissal procedures, Tennessee Code Annotated section 49–2–301(b)(1)(GG) also sets forth explicit post-dismissal administrative procedures that must be followed for nontenured, *licensed* employees. Specifically, if the nontenured, licensed employee exercises her predismissal right to a hearing before an impartial hearing officer and is subsequently dismissed, she may then appeal the hearing officer's decision to the board of education. *Id.* at (GG)(iii). Further, upon taking advantage of such an appeal, the licensed employee is entitled to "appear in person or by counsel and argue why the decision should be modified or reversed." *Id.* at (GG)(v). If the board sustains the dismissal, the licensed employee has the right to appeal the board's decision to chancery court. *Id.* at (GG)(vii). The licensed employee who seeks to challenge his or her dismissal may *not* seek review in chancery

court unless and until she exhausts the administrative remedy of appealing the hearing officer's decision to the Board. *Id.* at (GG)(iii) ("Any nontenured, *licensed* employee desiring to appeal from a decision rendered [by an impartial hearing officer] in favor of the school system shall first exhaust the administrative remedy of appealing the decision to the board of education[.]") (Emphasis added).

**10.** Although all parties and amicus curiae have referenced the second clause in discussing the procedure applicable to Bailey, this portion of the statute does not apply to his case because Bailey was not a licensed employee. Moreover, nothing in the record suggests that the BCBOE adopted the timing of (GG)(i) for the class of personnel to which Bailey belonged.

given a written decision of the suspension.

A director of schools may suspend an employee with or without pay.

DISMISSAL

The director of schools may dismiss any classified employee or non-tenured teacher during the contract year for incompetence, inefficiency, insubordination, improper conduct or neglect of duty.

The director of schools *may either choose to provide the employee with a hearing or give the employee the opportunity for a hearing before the Personnel Hearing Authority.* Requests for hearings must be filed in writing within ten (10) days of notification.

PERSONNEL HEARING AUTHORITY

The director of schools will appoint a Personnel Hearing Officer to conduct such hearings.

The Personnel Hearing Officer will hear the case and the employee shall have the right to:

1. be represented by counsel;
2. call and subpoena witnesses;
3. examine all witnesses; and
4. require that all testimony be given under oath.

Factual findings and decisions in all dismissal cases shall be reduced to written form and delivered to the affected employee within ten (10) working days following the close of the hearing. The employee may appeal the decision to the Board within ten (10) working days of the Personnel Hearing Officer rendering the written decision to the employee. Written notice of appeal to the Board shall be given to the director of schools. Within twenty (20) days o[f] receipt of notice, the director shall prepare a copy of the proceedings, transcript, documen-

tary and other evidence presented and provide the Board a copy of the same.

The Board shall hear the appeal. No new evidence shall be introduced. The non-tenured teacher may appear in person or be represented by counsel and argue why the decision should be modified or reversed. The Board shall take one of the following actions:

1. sustain the decision;
2. send the record back if additional evidence i[s] necessary; or
3. revise the penalty or reverse the decision.

Before any decision is made, a majority of the membership of the Board shall concur in sustaining the charges. The Board shall render a decision on the appeal within ten (10) working days after the conclusion of the hearing.

The director of schools shall also have the right to appeal any adverse ruling by the Personnel Hearing Officer in same manner as the non-tenured teacher.

Within twenty (20) days after receipt of notice of the decision of the Board, either party may appeal to the chancery court in the county where the school system is located. The Board shall provide the entire record of the hearing to the court.

(Footnotes omitted, emphasis added).

■ Our review of Tennessee Code Annotated section 49–2–301 and BCBOE Policy 5.202 makes clear that Bailey was not entitled by their provisions to the Full Hearing prior to his dismissal. The Court of Appeals therefore erred when it concluded that Tennessee Code Annotated section 49–2–301(b)(1)(GG)(i) required that Bailey be afforded the Full Hearing before being discharged. *See Bailey v. Blount County Bd. of Educ.,* 2008 WL 3982911, at *5. Bailey's claim of due process depriva-

tion has merit only if common law principles of due process jurisprudence render the 5.202 procedure inadequate.

## II. Due Process Requirements

Having determined what statutes and written policies are applicable to an individual in Bailey's situation, we turn to analyzing whether, as written, they meet constitutional due process requirements.[11]

### A. Entitlement

■■■ The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Article I, section 8, of the Tennessee Constitution, known as the "law of the land clause," provides similar protections. *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn.2006) (recognizing that article I, section 8 of the Tennessee Constitution "is synonymous with the due process provisions of the federal constitution"). The property interests protected by the Fourteenth Amendment are not created by the Constitution itself but stem from an independent source, such as contracts or state statutes. *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir.2002). One form of property entitled to due process protection is a public employee's right to continued employment pursuant to a one-year contract, given which, he or she may be dismissed only for cause. *See, e.g., Kendall v. Bd. of Educ.*, 627 F.2d 1, 4 (6th Cir.1980) *impliedly overruled in part on grounds not relevant to this discussion, see Prichard v.*

*Lafferty*, 974 F.2d 1338 n. 6 (6th Cir.1992) (unpublished table decision). We must first determine, therefore, whether Bailey had a protected right to continued employment at the time he was dismissed. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■■ As set forth above, Bailey was employed pursuant to a "year-to-year contract." Tenn.Code Ann. § 49–2–301(b)(1)(FF). He was entitled to a minimum of fifteen days' notice that his contract would not be renewed. *Id.* Additionally, Bailey could be dismissed only for cause during the term of his contract. *Id.* at (b)(1)(GG). Read together, these statutory provisions provided Bailey with a reasonable expectation of continued employment through the end of his contract period.[12] Accordingly, he had a sufficient property interest in his continued employment during the contract year that he could not be terminated during his contract term without adequate due process. *See Lindsey*, 285 F.3d at 487; *Kendall*, 627 F.2d at 4.

### B. Procedural Due Process Required

■■■ Once it is determined that a public employee may not be dismissed without due process, the inquiry shifts to the extent of process due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This inquiry takes several factors into account: the nature of the individual's property interest and its importance to him or her; the risk of an erroneous deprivation of the

---

**11.** The trial court dismissed Bailey's lawsuit on the basis of a procedural default, which we address below. We also address below Defendants' argument that Bailey has waived his claim of due process violation. We have, nevertheless, chosen to address on the merits the issue of the process to which Bailey was entitled. *See State v. Davidson*, 121 S.W.3d

600, 618 n. 11 (Tenn.2003); *State v. McKinney*, 74 S.W.3d 291, 303 n. 5 (Tenn.2002).

**12.** A contract may also, in and of itself, create a constitutionally-protected property right. *See Lindsey*, 285 F.3d at 487. Because Bailey's contract is not in the record, we cannot discern its contents or speak to the rights created thereby, if any.

interest resulting from inadequate procedural safeguards; any value that additional procedures might provide; and the burden imposed by providing such additional procedures. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). However, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)); *see also Lynch,* 205 S.W.3d at 391.

In the seminal case of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court considered the minimum procedural due process to which a public school employee was entitled in conjunction with his dismissal by a board of education. The Court first reiterated the long-standing rule that an employee who has a constitutionally protected property interest in her employment is entitled by the Due Process Clause of the federal constitution to "'some kind of a hearing'" before her discharge. *Id.* at 542, 105 S.Ct. 1487 (quoting *Bd. of Regents v. Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701). The Court also recognized, however, that "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545, 105 S.Ct. 1487. Rather, "'[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved *and the nature of the subsequent proceedings,*'" *id.* (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)) (emphasis added), and, "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action," *id.* (quoting *Mathews,* 424 U.S. at 343, 96 S.Ct. 893). The pre-termination hearing need be designed to function simply as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487.

█ The Court reasoned as follows:

The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person *or in writing,* why proposed action should not be taken is a fundamental due process requirement. The *tenured* public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *To require more than this* prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546, 105 S.Ct. 1487 (citations omitted) (emphases added). Accordingly, a pre-dismissal "hearing" may constitutionally be limited to an opportunity to respond to charges *in writing,* even for tenured teachers.

█ Significantly, the Court declared that its analysis rested "in part on the provisions in [state] law for a full post-termination hearing," *id.,* and emphasized that "the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures." *Id.* at 547 n. 12, 105 S.Ct. 1487. In *Loudermill,* the employee was entitled under state law to a post-termination "full administrative hearing and judicial review." *Id.* at 545, 105 S.Ct. 1487. In light of these post-termination procedures, all that federal due process required at the pre-termination stage was an "opportunity to respond." *Id.* at 547–48, 105 S.Ct. 1487. Thus, the scope of the pre-dismissal oppor-

tunity to respond that must be afforded a public employee who possesses a property interest in his or her job is examined in tandem with the post-dismissal procedures available to such employees. *See Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir.1985) (recognizing that, under *Loudermill*, "it is clear that the required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures"); *Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 173 (Tenn. Ct.App.2002) (recognizing that "pretermination and posttermination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied").

In *Carter*, the Court of Appeals for the Sixth Circuit considered the plight of Paul Wade, a classified civil service employee of the Western Reserve Psychiatric Habilitation Center. Wade claimed that he had been discharged "without first receiving a proper pre-termination hearing and without receiving a meaningful post-termination hearing." 767 F.2d at 272. The court determined that, prior to his termination, Wade had "appeared before the Patient Abuse Committee" and that this pre-termination hearing "was constitutionally sufficient as a matter of law." *Id.* at 273 n. 2. With respect to a post-termination hearing, however, the court reasoned as follows:

> Where [only an abbreviated pre-termination hearing is provided for], due process requires that a discharged employee's post-termination hearing be substantially more "meaningful." At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. The

severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the factual basis for the state's action and may provide reasons why that action should not be taken.

*Id.* at 273 (citing *Loudermill*, 105 S.Ct. at 1494, 1496). Because the record did not reveal what, if any, post-termination hearing Wade had received, the Court of Appeals remanded the case for a determination of whether Wade had been afforded a constitutionally sufficient post-termination procedure. *Id.* at 273–74. *See also Mitchell v. Fankhauser*, 375 F.3d 477, 481 (6th Cir.2004) (holding that, where employee was afforded only an abbreviated pre-termination hearing, he was "entitled to a more meaningful post-termination hearing").

■ On the basis of *Loudermill* and its progeny, including *Carter*, we are persuaded that a nontenured, nonlicensed employee under the jurisdiction of a director of schools and subject to the provisions of section 49–2–301, is, prior to dismissal for cause, entitled only to notice of the charges against him or her, an explanation of the administration's evidence, and an opportunity to respond in writing. *See Enochs v. Nerren*, 949 S.W.2d 686, 689–90 (Tenn.Ct.App.1996) (recognizing that "*Loudermill* does not require a full evidentiary hearing before an administrative body takes adverse action against an employee"). If dismissal ensues, the employee is thereafter entitled to an opportunity for a full and complete hearing before an impartial hearing officer, an opportunity to be represented by counsel, an opportunity to call and subpoena witnesses, an opportunity to examine all witnesses, and the right to require that all testimony be given under oath. *See Case*, 98 S.W.3d at 174–75 (holding that, where a classified civil

service employee may be terminated only for cause, due process requires that the post-termination hearing afford the employee "the opportunity to confront and cross-examine the witnesses against him ... where the facts giving rise to termination are in dispute or where the severity of the discipline is challenged"). In combination, the applicable provisions of Tennessee Code Annotated section 49–2–301 and BCBOE Policy 5.202 satisfy these due process requirements.[13]

### C. Procedural Process Afforded Bailey

#### 1. Date of Bailey's Dismissal

In order to examine the adequacy of the pre- and post-dismissal procedures provided specifically to Bailey, we must first determine his date of dismissal. Defendants contend in their reply brief to this Court that Bailey's termination "was not complete ... until [Bailey] voluntarily dismissed his appeal of the hearing officer's decision before the Blount County Board of Education." That is, they assert that Bailey was not actually dismissed until *after* the Full Hearing. We reject this contention.

Hord's November 30 letter to Bailey states unambiguously, "[y]ou [Bailey] are dismissed from employment with Blount County Schools as of this date, for improper conduct." Also, after the Full Hearing,

the Personnel Hearing Authority found that, "[o]n November 30, 2006, Director of Schools Alvin Hord terminated Mr. Bailey's employment for improper conduct." The record reflects no actions by Defendants to contradict, correct, or otherwise dispute this finding. Indeed, during the Full Hearing, Defendants' lawyer told the Personnel Hearing Authority that Bailey was terminated on November 30th. And, in their motion for summary judgment, Defendants assert that the hearing officer's decision "*sustained* the termination of Mr. Bailey's employment by Alvin Hord." (Emphasis added). Defendants will not now be heard to argue otherwise. Accordingly, we will analyze the issues before us on the basis that Bailey was dismissed on November 30, 2006, prior to the Full Hearing.

#### 2. Pre- and Post–Dismissal Procedures Provided to Bailey

■ BCBOE Policy 5.202 provides that, when dismissing an employee for cause, the director of schools may *either* provide the employee with a hearing before the director *or* give the employee an opportunity for a hearing before the Personnel Hearing Authority. In this case, Director Hord initially suspended Bailey with pay and, by letter dated November 1, 2006, notified Bailey with the reasons for

---

**13.** If a Tennessee school system is operating without the benefit of a policy equivalent to BCBOE Policy 5.202, due process requirements for nonlicensed employees include, prior to dismissal, (1) written notice of the charges against the employee, (2) an explanation of the administration's evidence, and (3) an opportunity to respond in writing. If dismissal ensues, the employee is thereafter entitled to an opportunity for a full and complete hearing before an impartial hearing officer, an opportunity to be represented by counsel, an opportunity to call and subpoena witnesses, an opportunity to examine all witnesses, and the right to require that all testi-

mony be given under oath. *See Carter,* 767 F.2d at 273; *Case,* 98 S.W.3d at 174–75. If the employee remains dissatisfied with the disposition of the charges after her full hearing, she may appeal the hearing officer's ruling to chancery court via a petition for common law writ of certiorari. *See* Tenn.Code Ann. § 27–9–101 (2000); *Cooper v. Williamson County Bd. of Educ.,* 746 S.W.2d 176, 178–79 (Tenn.1987). Our recital of these minimum due process requirements is consistent with the recommendations provided by Tennessee's Office of the Attorney General. *See* Tenn. Op. Atty Gen. No. 05–158, 2005 WL 2755422, at *4, *5 (Oct. 14, 2005).

the suspension and gave him an opportunity to respond to the charges in writing. The letter also notified Bailey that further investigation would continue, putting Bailey on notice that his suspension might escalate to dismissal. Bailey was subsequently provided with the complaint and evidence uncovered during the investigation.

 Director Hord did not afford Bailey the opportunity for a hearing before a Personnel Hearing Authority prior to dismissing Bailey on November 30. Thus, Bailey's pre-termination "hearing" was limited to an opportunity to respond in writing to the charges that had been lodged and were under investigation. While we acknowledge that an opportunity to respond in writing is a limited hearing, it is a constitutionally cognizable hearing nonetheless. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487. Whether it passes constitutional muster depends on the extensiveness of the post-dismissal procedures that were made available to Bailey.

Although Bailey was not specifically entitled by section 49–2–301 to a post-dismissal hearing before an impartial hearing officer, he was nevertheless provided with one pursuant to Policy 5.202. Bailey chose not to attend the hearing, but his lawyer did and actively participated in defending his client's cause, including the cross-examination of the BCBOE's witnesses. The Personnel Hearing Authority upheld Bailey's dismissal. Subsequently, although Bailey was also not entitled by section 49–2–301 to appeal the hearing officer's decision to the BCBOE, he was nevertheless provided with this opportunity pursuant to Policy 5.202. Again, he took advantage of this post-dismissal administrative proceeding. Prior to its conclusion, however, Bailey chose to dismiss this administrative appeal. Had Bailey persisted with this administrative remedy, he would have been entitled to seek judicial review pursuant to Tennessee Code Annotated section 49–2–301(b)(1)(GG)(vii) ("Any party dissatisfied with the decision rendered by the board shall have the right to appeal to the chancery court in the county where the school system is located within twenty (20) working days after receipt of notice of the decision of the board.").

Our review of the procedures made available to Bailey and actually undertaken by the parties makes clear that Bailey was provided with adequate pre- and post-dismissal opportunities to respond to the charges against him. We hold that Bailey was afforded sufficient process to satisfy constitutional due process requirements. Bailey's contention that he was denied due process is without merit.

### III. Remaining Issues

Our determination that BCBOE Policy 5.202 applies in this case and meets the *Loudermill* due process standards does not end our inquiry because the trial court dismissed Bailey's lawsuit *in toto* on the basis that he had failed to exhaust his administrative remedies. In so doing, the trial court erred because Defendants' motion for summary judgment did not encompass all of Bailey's claims.

### A. Summary Judgment

 Our Rules of Civil Procedure provide that "[a] party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor *as to all or any part thereof.*" Tenn. R. Civ. P. 56.02 (emphasis added). A trial court should grant a motion for summary judgment only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Obviously, when a plaintiff files a lawsuit contain-

ing multiple causes of action, the defendant(s) and the trial court must carefully analyze which claims may be subject to summary judgment.

In this case, Defendants filed a motion for summary judgment "in favor of the Defendants and against the Plaintiffs." Defendants did not seek a partial summary judgment but a judgment in their favor on the entire lawsuit. Defendants argued that Bailey's complaint was "essentially based upon the wrongful termination of the contract of employment" and that Bailey could have "no cause of action based upon the wrongful termination of employment because [he] failed to exhaust his administrative remedies" as required by Tennessee Code Annotated section 49–2–301 and BCBOE Policy 5.202. We note that Bailey's original complaint does not actually allege a cause of action for "wrongful termination."

As set forth above, Bailey's original complaint set forth nine distinct causes of action, including, among other things, deprivation of due process in his dismissal, defamation, invasion of privacy, violation of federal privacy laws, infliction of emotional distress, and violation of his right to free speech. Only the first of these multiple causes of action—that Defendants violated Bailey's due process rights in conjunction with dismissing him—is within the purview of Tennessee Code Annotated section 49–2–301 or Policy 5.202. Only the first of these multiple causes of action is therefore within the scope of Defendants' motion for summary judgment. The trial court therefore erred when it summarily dismissed the remaining original causes of action. Accordingly, this matter must be remanded for further proceedings relevant to Bailey's remaining causes of action.

### B. Exhaustion of Remedies

We turn now to the propriety of the trial court's grant of summary judgment on Bailey's claim that Defendants violated his due process rights in conjunction with his dismissal. Although we have already determined that Bailey suffered no due process violation in his dismissal, the trial court did not grant summary judgment on this basis. Rather, the trial court granted summary judgment on the basis that Bailey failed to exhaust his administrative remedies.

The factual basis for Defendants' motion for summary judgment is Bailey's voluntary dismissal of his appeal to the BCBOE prior to its being heard. Bailey does not dispute this fact. The issue, then, is whether Bailey's dismissal of his appeal entitles Defendants to summary judgment as a matter of law on Bailey's due process claim.

Defendants' motion for summary judgment recites that Tennessee Code Annotated section 49–2–301(b)(1)(GG)(iii) specifically required Bailey to exhaust all of his administrative remedies prior to filing litigation. As we have noted previously, however, nothing in the record supports the application of subsection (GG)(iii) to this case. Policy 5.202 does apply, and that policy provides that an employee unhappy with the outcome of his or her administrative hearing may appeal first to the Board of Education and then to chancery court. Specific time lines are provided. Unlike (GG)(iii), however, Policy 5.202 does not contain a specific requirement that administrative remedies first be exhausted.

This Court recently reiterated that the exhaustion of administrative remedies doctrine dictates that, if a claim "is first cognizable by an administrative agency ... the courts will not interfere 'until the administrative process has run its course.'" *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn.2008) (quoting

*United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). By discouraging premature judicial interference with agency processes, the exhaustion doctrine serves several goals. First, it allows an administrative agency to function efficiently and to correct its own errors. *Id.* Second, it "allows the agency to develop a more complete administrative record upon which the court can make its review." *Id.* at 839. Third, the doctrine allows agencies to take full advantage of their particular expertise in specialized fact-finding, the interpretation of contested technical subject matter, and disputes over the agency's regulations. *Id.*

Although the doctrine arose as "an exercise of judicial prudence," *id.* at 838, many current exhaustion requirements are mandated by statute, *id.* Thus, "[w]hen a statute provides specific administrative procedures, 'one claiming to have been injured must first comply with the provisions of the administrative statute.'" *Id.* (quoting *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635, 641 (1956)). Where a statute requires by its plain words that administrative remedies be exhausted, exhaustion is an absolute prerequisite for relief. *Id.* However, "a statute does not require exhaustion when the language providing for an appeal to an administrative agency is worded permissively." *Id.* Where exhaustion is not mandatory, it is within a court's discretion whether to dismiss a case for failure to exhaust administrative remedies. *Id.; see also Reeves v. Olsen,* 691 S.W.2d 527, 530 (Tenn.1985) ("'Except when required by statute, exhaustion of administrative remedies is not an inexorable command, but is a matter of sound judicial discretion.'") (quoting *Cerro*

*Metal Prods. v. Marshall,* 620 F.2d 964, 970 (3rd Cir.1980)).

Bailey argues that the doctrine should not be applied to him because his appeal before the BCBOE would have been futile. *See, e.g., Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980) (recognizing that a party should not be required to exhaust his administrative remedies where that route would be futile or the remedy inadequate). Bailey's bare assertion that his appeal to the BCBOE would have been futile is insufficient to trigger this exception to the exhaustion doctrine, however. As recognized by our Court of Appeals,

> [t]he standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.

*Cantrell v. Walker Die Casting, Inc.,* 121 S.W.3d 391, 396 n. 3 (Tenn.Ct.App.2003) (quoting *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 419 (6th Cir.1998)) (internal quotation marks and citations omitted). *See also Communications Workers of Am. v. AT & T,* 40 F.3d 426, 432 (D.C.Cir.1994) (recognizing that "[t]he futility exception is ... quite restricted and has been applied only when resort to administrative remedies is clearly useless") (internal quotation marks and citation omitted). Bailey has failed to demonstrate that his appeal to the BCBOE would have been pointless and that its affirmance of the hearing officer's decision was a foregone conclusion. Bailey is not exempt from application of the exhaustion doctrine on this basis.[14]

14. As our previous discussion indicates, Bailey also does not prevail on his contention that the exhaustion doctrine should not apply because Defendants first failed to afford him the Full Hearing on a timely basis.

In this case, application of the exhaustion doctrine was discretionary with the trial court. This Court will not conclude that a trial court has abused its discretion unless the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks,* 271 S.W.3d 90, 116 (Tenn. 2008). We hold that the trial court did not abuse its discretion in applying the exhaustion doctrine to grant summary judgment on Bailey's claim that Defendants deprived him of his due process rights in conjunction with dismissing him.

## C. Waiver

It is uncontroverted that, prior to filing his complaint in circuit court, Bailey made no objection to the procedures Defendants utilized in conjunction with dismissing him, or the order in which the procedures took place. Defendants argue that, even if the grant of summary judgment was not appropriate on the issue of exhaustion of remedies, by his silence, acquiescence, and active participation in the administrative procedures provided, Bailey has waived his complaint that he was deprived of due process in conjunction with his dismissal. We agree.

This Court has made clear that

it is no less incumbent for a party to an administrative proceeding to raise issues of procedural irregularity than it is for a party in a judicial proceeding. The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors. Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable.

*McClellan v. Bd. of Regents,* 921 S.W.2d 684, 690 (Tenn.1996). *See also Richardson*

*v. Tenn. Bd. of Dentistry,* 913 S.W.2d 446, 455 (Tenn.1995) ("Full consideration of constitutional procedural issues by the agency will assure that the responsible agency has a full opportunity to reach a considered decision on a complete record after a fair proceeding."). Accordingly, we have held that "[o]ne appearing before an administrative tribunal must make timely objections to procedural errors and must raise the errors at the administrative level in order to preserve them for consideration in a petition for judicial review." *McClellan,* 921 S.W.2d at 690. *See also City of Brentwood v. Metro. Bd. of Zoning Appeals,* 149 S.W.3d 49, 55 (Tenn.Ct.App. 2004) ("Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review."); *In re Billing and Collection Tariffs,* 779 S.W.2d 375, 380 (Tenn.Ct.App. 1989) (recognizing that, "[n]o matter how informal the proceeding, a person appearing before an administrative tribunal must make timely objections to procedural errors and must raise in a timely manner the issues and questions he deems material before he will be permitted to raise them in a petition for review").

Bailey could have raised the issue of the timeliness of the Full Hearing either before it was conducted or during it. The Personnel Hearing Authority then would have had the opportunity to consider whether Bailey's November 30th dismissal was premature. Had she found in Bailey's favor on this point, she could have ruled accordingly, perhaps by ordering the record be corrected to show him suspended, with or without pay, from the inception of the investigation throughout the period preceding her ruling. Bailey's failure to raise the issue precluded the hearing officer from ordering any such "correction." Bailey also failed to prosecute his appeal

to the BCBOE to a conclusion on the merits, thereby depriving the BCBOE of the same opportunity.

Bailey has offered no reason for his failure to raise the issue of whether he was dismissed prematurely with either the Personnel Hearing Authority or the BCBOE. Rather, he claims that, since Defendants violated his due process rights first, they should not be heard to argue that he was required to raise their violation in order to preserve it. For the reasons set forth above, we have determined that Bailey's due process rights were not violated. Bailey's claim that his procedural default should be disregarded is therefore not persuasive.

In sum, we agree with Defendants that Bailey has waived his claim that Defendants violated his due process rights by dismissing him prior to providing him the Full Hearing.

### D. Bailey's Other Causes of Action

Our holdings in this matter are necessarily limited to those arising from the trial court's grant of summary judgment based upon Defendants' motion for same. That motion posited that Defendants were entitled to summary judgment as a matter of law on the sole legal theory that Bailey had failed to exhaust his administrative remedies. The only cause of action out of the many set forth in Bailey's original complaint to which the exhaustion doctrine arguably applied is the first one: that Defendants conspired to deny Bailey his due process rights in conjunction with dismissing him. Accordingly, Bailey's remaining original causes of action are as yet unresolved.

■ Complicating the issue of which causes of action remain is Bailey's timing of the filing of an amended complaint. Bailey filed his original complaint on March 9, 2007. Rather than file an answer (or a motion to dismiss), Defendants filed their motion for summary judgment on March 26, 2007. Bailey's Response to the Motion for Summary Judgment was filed on April 25, 2007, and contained a certificate of service showing it was mailed to opposing counsel the same day. By a pleading called "Amend Complaint" and filed the following day (but containing a certificate of service dated six days earlier), Bailey amended his complaint to include a specific cause of action for wrongful discharge. Although this pleading was never acknowledged overtly by either Defendants or the trial court, we deem the "Amend Complaint" pleading to have been effective in adding the cause of action.

■ Tennessee Rule of Civil Procedure 15.01 provides that "[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served." Defendants never filed an answer to the original complaint; rather, they filed their motion for summary judgment. A motion for summary judgment is not a "responsive pleading." *CitiFinancial Mortgage Co., Inc. v. Beasley*, No. W2006–00386–COA–R3–CV, 2007 WL 77289, at *4 (Tenn.Ct.App. Jan.11, 2007). Accordingly, Bailey filed his "Amend Complaint" before a responsive pleading was served, and the pleading was therefore effective to add the claim of wrongful discharge. However, Defendants filed nothing to bring this additional cause of action within the reach of their summary judgment motion, even though their arguments concerning exhaustion (and due process) are also relevant to wrongful discharge. The trial court also made no reference to this additional cause of action in its order granting summary judgment, even though its analysis and ours might also be deemed to apply to this count as well. Thus, this cause of action must also be considered on remand.

### E. Non–Renewal of Bailey's Contract

 Because the Court of Appeals held that Bailey's dismissal was "void ab initio," it also held that Bailey's employment as "a nontenured teacher" "continues, without interruption, ... back to the failed termination of November 30, 2006." *Bailey v. Blount County Bd. of Educ.*, 2008 WL 3982911, at *6. We disagree. Bailey was employed under a one-year contract for the 2006–07 school year. Non-renewal of the contract required only fifteen (15) days written notice. Notwithstanding any other concerns about Director Hord's November 30, 2006 letter, it certainly constitutes adequate written notice of intent to "nonrenew" the contract at its end. Therefore, Bailey's employment with the BCBOE ended no later than the last day of the one-year contract. Any property interest Bailey had in his job extended only to that portion of the one year remaining on the contract.[15]

### F. Recusal of Trial Judge

In his brief to the Court of Appeals following the trial court's summary dismissal of his complaint, Bailey sought to have the trial court's ruling reversed and the matter remanded. In this regard, Bailey also asked that this litigation "be assigned to another judge other than the trial court which heard this case based upon the trial court's apparent bias[ ] toward protecting county government and the taxpayers of Blount County." [16]

 Of course,

[t]he right to a fair trial before an impartial judge is a fundamental constitutional right. *See Chapman v. State of California*, 386 U.S. 18, 23 n. 8, 87 S.Ct.

824, 828 n. 8, 17 L.Ed.2d 705, 710 n. 8 (1967) (citing *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). Article VI, § 11 of the Tennessee Constitution provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested." The purpose of this constitutional provision is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality or favor. *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). The right to an impartial judge is also guaranteed by Article I, § 17 of the Tennessee Constitution, which provides that every citizen shall have his case tried "by due course of law." *In re Cameron*, 126 Tenn. 614, 659, 151 S.W. 64, 76 (1912).

*State v. Benson*, 973 S.W.2d 202, 205 (Tenn.1998). These revered and longstanding principles notwithstanding, if Bailey seeks to have a different trial judge adjudicate this matter upon remand, he must first file a motion to recuse with the trial court below. As this Court has previously recognized, "[a] judge's determination of whether he or she will disqualify him or herself from sitting in a case is a matter *within that judge's* discretion." *State v. Austin*, 87 S.W.3d 447, app. 470 (Tenn.2002). Accordingly, "the accepted practice when seeking the disqualification of a judge is through the filing of a motion for recusal with supporting affidavits of prejudice." *Id.* at app. 471. A trial

---

15. We express no opinion about the damages available under any other cause of action asserted by Bailey.

16. Bailey did not raise this issue in his briefs to this Court, perhaps because he prevailed in the Court of Appeals. We address this issue briefly here because we are remanding the case to the trial court for further proceedings.

court's decision on a motion to recuse is entrusted to the trial court's discretion, and an appellate court will not disturb the trial court's ruling absent an abuse of that discretion. *Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d 560, 564 (Tenn.2001).

## CONCLUSION

For the reasons set forth above, we have determined that Bailey was afforded adequate due process in conjunction with his dismissal from Heritage High School. Accordingly, we reverse that portion of the Court of Appeals' judgment holding that Bailey's dismissal was void ab initio. The trial court properly granted summary judgment to Defendants on Bailey's claim that Defendants conspired to deny him his due process rights in conjunction with his dismissal. Bailey's remaining causes of action, including the allegations contained in the amended complaint, were not addressed by Defendants' motion, however, and the trial court erred in dismissing those claims. Accordingly, this matter must be remanded to the trial court for further proceedings on Bailey's remaining claims.[17]

Consistent with our remand, we hold that the trial court also erred in assessing sanctions against Bailey for filing a frivolous lawsuit. We affirm that portion of the Court of Appeals' judgment vacating the assessment of sanctions.

This cause is remanded to the trial court for further proceedings consistent with this opinion.

The costs of this cause are taxed one-half to Bailey and one-half to Defendants, for which execution may issue if necessary.

SHARON G. LEE, J., not participating.

---

**17.** These causes of action include Bailey's claims that Defendants (1) defamed him; (2) invaded his privacy by casting him in a false light; (3) violated federal privacy law by intercepting his emails; (4) intentionally and negligently inflicted emotional distress; (5) denied his right to free speech in connection with his dismissal; (6) caused him stress and the loss of employment opportunity; (7) caused his wife pressure, shame, and emotional distress; (8) jeopardized his efforts to obtain his alternative teacher's certificate; and (9) discharged him wrongfully. We reiterate, however, that the trial court's dismissal of Bailey's claims regarding his March 2006 suspension is affirmed. *See* footnote 8, *supra.*