IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2012 Session

## ARI, INC. v. JAMES G. NEELEY, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT

Appeal from the Chancery Court for Davidson County
No. 1135I     Walter C. Kurtz, Sr. Judge

No.  M2011-02272-COA-R3-CV - Filed August 3, 2012

This is an appeal of the Chancery Court's order upholding the Tennessee Department of Labor and Workforce Development's determination that ARI underpaid state unemployment tax premiums.  ARI appeals asserting its due process rights were violated in the administrative hearing process and that there is not substantial and material evidence to support the Department's assessment.  Finding no error, we affirm the Department's assessment of unpaid unemployment tax premiums.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert E. Boston, Mark W. Peters, and Michael Thomas Harmon, Nashville, Tennessee; Arthur M. Fowler, Johnson City, Tennessee; and Brian Nugent, Fort Collins, Colorado, for the Appellant, ARI, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General; and Lindsey Owusu Appiah, Nashville, Tennessee, for the Appellee, James G. Neeley, Commissioner of the Tennessee Department of Labor and Workforce Development.

**OPINION**

## I.  Factual and Procedural History

Rick and Sharon Thomason own and operate staff leasing companies in East Tennessee, one of which is ARI, Inc. (d/b/a Southgate Styling Salon), the subject of this appeal.  On July 24, 2004, the Department notified ARI it had been selected for an audit to

determine whether ARI was in compliance with the Tennessee Employment Security Law and Administrative Rules—the audit covered the time period from January 2002 through the end of March 2004. After the audit was completed, the Department sent ARI a letter explaining that the Department determined ARI had engaged in "a practice of reporting wages for unemployment insurance premium purposes that violate[d] the experience rating principles of the Tennessee Employment Security Law." The Department found the total amount of unpaid insurance premiums, including interest, was $527,502.45.[1]

On May 17, 2005, ARI requested the Department to review its finding. On August 15, 2005, the Department issued a 102 page Redetermination Decision affirming its initial finding that ARI had violated Tennessee Employment Security Law. The Redetermination Decision included findings of fact, one of which is as follows:

> 20. ARI, Inc. began reporting the majority of its payroll under account #0559-771 in the 4th quarter 2001 . . . . Transfers of payroll occurred from Administrative Resources, Inc. in 2001 (1,180 employees 2001 and only 98 in 2002) to Human Resource Services, Inc. in 2002 (13 in 2001, 882 in 2002, and 30 in 2003), and then to ARI, Inc./Southgate Styling Salon in 2003 (100 in 2002, 928 in 2003 and 15 in 2004). . . .

In the Redetermination Decision, the Department held that ARI's primary purpose in restructuring was "shifting the workforce/payroll in order to reduce SUTA[2] premium rates and not for the purpose of management risk issues dealing with the acquisition of workers' compensation insurance coverage . . . ." The Department further held that "ARI, Inc. misrepresented their major business activity as a beauty salon instead of a 'staffing' entity and transferred employees between various entities without informing the division in order to evade premium liability . . . ."

ARI appealed the Redetermination Decision to the Appeals Tribunal which heard ARI's appeal on March 3, 2010.[3] The Appeals Tribunal rendered a written decision affirming the Department's Redetermination Decision on May 10, 2010 which included the following factual findings:

---

[1] This amount was later recalculated to correct a typographical error. In the later Decision, the amount owed was determined to be $591,291.24.

[2] SUTA is the abbreviation for state unemployment tax act.

[3] The record reflects that the appeal hearing was delayed as a result of attempts to settle the case as well as the death of two principal participants.

A.R.I. operated or exercised common ownership and control of numerous entities engaged in the business of staff leasing. A.R.I.'s SUTA premium rate was calculated to be 3.3%.

On or about April 2002, A.R.I. acquired a beauty salon doing business as Southgate Styling Salon ("Southgate"). Southgate was taxed at a SUTA premium rate of .20%. The employer then began shifting its payroll from entities under its control to the payroll of Southgate. By December, 2002 there were 100 employees being compensated on Southgate's payroll. By the end of the second quarter of 2003, more than a thousand employee payroll accounts had been transferred to Southgate.

A.R.I. failed to notify the Department of the change in ownership by the end of the calendar quarter of the acquisition.

No evidence was adduced at hearing to establish that any of the 100 employees transferred were qualified to work as hair stylists, nor was any evidence introduced that Southgate had ever engaged in the business of a staff leasing company.

A visit to the premises of Southgate on July 12, 2004 by two Agency auditors uncovered the fact that Southgate was occupied and being operated by only three working hairstylists.

In its conclusions of law, the Appeals Tribunal concluded:

The issue is whether the employer engaged in the transfer of employees among multiple accounts to avoid unemployment insurance premium liability and whether the employer is in compliance with Tennessee employment security law and administrative regulations under T.C.A. § 50-7-101 et seq.

An employer who mergers with or acquires another business entity with an experience rating is required by law to notify the Division of Employment Security of the transfer under T.C.A. §§ 50-7-403(b)(4) . . .

In the instant case, it appears that the employer has not complied with this requirement. On this basis alone, the argument may be made that the transfer of experience rating of Southgate may be denied. Assuming for the purpose of argument that it could be transferred regardless, the remaining factors also point to a denial of the transfer of experience rating.

The Appeals Tribunal discussed at length the applicability of Tenn. Code Ann. § 50-7-403(b)(5)(A) to the facts of the case and concluded that "in acquiring Southgate and then transferring staff to its payroll, it was [ARI's] sole or primary purpose to obtain a lower unemployment premium rate."

On May 20, 2010, ARI appealed the Appeals Tribunal's decision to the Department's Board of Review. On November 29, 2010, the Board of Review issued its decision which included the following findings of fact and conclusions of law:

> Based upon the entire record in this case, the Board of Review finds that the prior Appeals Tribunal decision dated May 10, 2010 involving the employer entities listed below should be affirmed.
>
> > ARI, Inc. d/b/a/ Southgate Styling Salon
> > Staffing Solutions, Inc.
> > Human Resources Services, Inc.
> > Administrative Resources, Inc.
> > ARI Payroll Transfers Div.
> > Management Resources
>
> The employer entities, as listed, were at all relevant times under the common ownership, management and control of Mr. Rick Thomason. The relevant facts are that the employer entities listed operated as a styling salon, as a temporary employment service and as a temporary leasing company. Each entity listed had an individual account with [the Department] and reported wages of its employees on a quarterly basis and paid unemployment insurance premiums.
>
> As a result of a 2004 audit of these accounts, for the years 2003 and 2004, it was discovered and undisputed that there were repeated employee transfers between the various entities without proper notification to [the Department]. Such action resulted in an underpayment of unemployment insurance premiums. The employer testifies that the transfers were made for the purpose of providing affordable workers' compensation benefits. As a result of a recalculation of the premiums due to these transfers, ARI, Inc. was determined to owe $591,291.24 in additional premiums, plus interest at a rate if [sic] 1.5% per month.
>
> The applicable statutes in this matter are T.C.A. section 50-7-401 et seq. The issue in this case is whether these employer entities are liable for unemployment insurance benefits under the state unemployment tax act (SUTA). Under

T.C.A. section 50-7-402, all non-governmental covered employers are required to pay SUTA premiums of 5.5% of wages unless premiums are paid based on the employer's experience in the payment of premiums and with respect to the benefits charged against their accounts.

Under T.C.A. section 50-7-402, the statute provides for combining employer entities. The successor entity will, in circumstances such as these, succeed to the taxable payroll, benefit and premium experience of the predecessor unless it is shown that to the satisfaction of the administrator that both are not the same parties of interest. In this case, based on the employer's own testimony and the attempts to shift the business interests to provide benefit to the employer, this is the same parties of interest. Although there may have been another intent involved in the moving the employees, the result is still that the employer did not report the changes to the department as required and failed to pay the appropriate tax rate. The employer owes $591,291.24 in additional premiums, plus interest at a rate if [sic] 1.5% per month.

DECISION: The decision of the Appeals Tribunal which found the employer liable for the additional premiums and interest is affirmed.

Next, ARI appealed to the Chancery Court for Davidson County. ARI asserted that the transfer of employees was for a "reasonable business purpose" and that the Department's decision was not supported by substantial and material evidence. ARI further argued that the Department's decisions upholding the Redetermination Decision were in violation of its due process rights because the Department "purport[ed] to establish liability based upon an argument for which ARI was offered no notice prior to the hearing." Specifically, ARI alleged that the Department asserted, for the first time, that the liability in the Redetermination Decision was based on "failure to notify" the Department of the transfers.

The court held a hearing on August 23, 2011, and entered a Memorandum and Order upholding the Department's decision on September 26, 2011. The court rejected ARI's due process argument and held:

at no time during the pendency of these proceedings has ARI or its related companies contended that they gave notice of employee transfers. Nor has ARI made any tender of proof that if only they had known it was an issue, they could have rebutted the contention. Even though the failure to notify [the Department] was not interjected into the proceedings until 2010, there is no showing by petitioner of prejudice other than its objection that its opponent changed theories. Furthermore, this "sneak in a new theory" issue was not

raised by petitioner on motion to reconsider before the Appeals Tribunal, nor was it raised before the Board of Review.

Finally, the court held that the evidence supported the Department's finding of the amount of the underpaid SUTA premiums. ARI appeals.

## II. Standard of Review

When reviewing the decision of an administrative agency, this Court employs the same standard of review as the lower court. *Armstrong v. Neel*, 725 S.W.2d 953, 955 n.1 (Tenn. Ct. App. 1986). Specifically, our review is prescribed in Tenn. Code Ann. § 50-7-304(i)(2)–(3) as follows:

> (2) The chancellor may affirm the decision of the board, or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (A) In violation of constitutional or statutory provisions;
> >
> > (B) In excess of the statutory authority of the agency;
> >
> > (C) Made upon unlawful procedure;
> >
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> >
> > (E) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board.

Tenn. Code Ann. § 50-7-304(i)(2). Under subsection (2)(E), substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Sweet v.*

*State Tech. Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal Dist. of Washington Cnty.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). We do not substitute our judgment for that of the administrative agency "as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 50-7-304(i)(3).

## III. Analysis

ARI challenges the Department's assessment of unpaid unemployment taxes for three reasons. First, ARI contends that its due process rights were violated when the Board of Review upheld the Appeals Tribunal decision on the basis of "a theory of liability that was not a part of the Redetermination Decision." Second, ARI urges that the remedy ordered in the Redetermination Decision—the aggregation of multiple accounts—is not allowed when calculating its liability. Finally, ARI insists that the Department has not substantiated its claim with material evidence as to the amount of taxes ARI owes. We will address each contention in turn.

The Department determined that ARI violated two provisions of Tennessee Employment Security Law. First, in the initial determination and in the Redetermination Decision, the Department found that ARI violated provisions of Tenn. Code Ann. § 50-7-403(b)(5)(A)[4] by effectuating payroll transfers for the primary purpose of obtaining a more favorable premium rate. When ARI appealed the Redetermination to the Appeals Tribunal, the Tribunal, in addition to affirming the initial finding of a violation under Tenn. Code Ann. § 50-7-403(b)(5)(A), determined that ARI also violated Tenn. Code Ann. § 50-7-403(b)(4) due to ARI's failure to notify the Department of its mergers, acquisitions, and transfers of taxable payroll.[5] The Board of Review upheld the Department's decision that ARI violated

---

[4] The Department seeks to impose liability under the 2002–2004 version of Tenn. Code Ann. § 50-7-101 *et seq*. Neither party appeals the Department's reliance on the 2002–2004 version of Tenn. Code Ann. § 50-7-101 *et seq*. Accordingly, all citations herein are to the 2002–2004 version of our code.

Tenn. Code Ann. § 50-7-403(b)(5)(A) states as follows:

(5)(A) Notwithstanding any of the foregoing provisions of this section, if the administrator finds in any case that the acquisition of any business or a distinct, severable, identifiable and segregable part thereof is made solely or primarily for the purpose of obtaining a more favorable rate of premiums, the transfer of accounts shall not be approved. The acquisition shall be deemed to have been made solely or primarily for such purpose if the administrator finds an absence of any reasonable business purpose of the acquisition other than a more favorable rate.

[5] Tenn. Code Ann. § 50-7-403(b)(4) provides in relevant part as follows:

(continued...)

-7-

Tenn. Code Ann. § 50-7-403(b)(4); the trial court likewise upheld the Department's assessment of unpaid unemployment taxes on the basis of a violation of Tenn. Code Ann. § 50-7-403(b)(4).

## A. Due Process

ARI asserts it was unfairly prejudiced when the lower court upheld the Board of Review's decision based on theory of liability that was not part of the Redetermination Decision. In particular, ARI argues that it was not notified regarding the second theory of liability, namely, Tenn. Code Ann. § 50-7-403(b)(4), and due to this lack of notice, ARI's due process rights were violated.

Article I, Section 8 of the Tennessee Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit the State from taking property without due process of law. The "process" that is "due" varies depending on the situation presented. *See Case v. Shelby Cnty. Civil Service Merit Bd.*, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002) (citing *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). In administrative proceedings, such as the one presented here, "the minimum requirements of due process must . . . be satisfied when an agency's decision could adversely affect vested property interests or other constitutional rights." *Martin v. Sizemore*, 78 S.W.3d 249, 267 (Tenn. Ct. App. 2001). While due process does not dictate particular procedures in every instance, administrative proceedings must afford parties: 1) adequate notice, 2) an opportunity for a hearing at a meaningful time and in a meaningful manner, and 3) an opportunity to obtain judicial review of the board's or agency's decision. *Id.* (internal citations omitted).

ARI does not argue that the Department failed to afford it an opportunity to be heard at a meaningful time and in a meaningful manner, nor does it find fault with the opportunities for judicial review available to it, thus, we focus our inquiry on whether ARI was sufficiently notified regarding the basis upon which the deficiency was assessed. To satisfy the basic due process notice requirement, the notice provided must be "'reasonably calculated under all the circumstances, to apprise interested parties' of the claims of the opposing parties." *McClellan*

---

[5](...continued)
No total or partial transfer of taxable payroll, benefit and premium experience may be made without the written consent of all employers or employing units involved and filed with the division of employment security during the calendar quarter in which the acquisition occurs or during the calendar quarter immediately following such quarter.

*v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 688 (Tenn. 1996) (citing *Mullane v. Central Hanover Bank Trust Co.*, 339 U.S. 306, 314 (1950)).

ARI was notified regarding the Department's finding of a violation of Tenn. Code Ann. § 50-7-403(b)(4) on March 10, 2010 when the Appeals Tribunal issued its decision.[6] This finding was predicated on the testimony of Mr. Thomason, the owner of ARI, and the testimony of Mr. Jones, the Department's auditor. Mr. Thomason testified as follows:

> [Q]: Okay. Let me just ask you, when you moved these employees between the different accounts did you notify the department in any other manner other than the Quarterly Wage Reports?
>
> Mr. Thomason: After this came up twice we did, my general manager LouAnn, sent a list of names.
>
> [Q]: Now are you talking about during the period of this audit, 2002, 2004 or afterward?
>
> Mr. Thomason: Oh, no, we just reported it on the Quarterly Reports.

Mr. Jones stated:

> Mr. Jones: Well the main thing was that the department was not notified of the transfers. At no point in my audit and no point in my investigation or my review of any of the records could I come to the conclusion that the employer had informed me that he was transferring employees among accounts. . . .

---

[6] Although the Redetermination Decision does not specifically cite Tenn. Code Ann. § 50-7-403(b)(4) as a basis for liability, paragraph 13 on page 101 of the Redetermination Decision discusses ARI's failure to notify the Department of employee transfers and states in pertinent part as follows:

> 13. That ARI, Inc. misrepresented their major business activity as a beauty salon instead of a "staffing" entity and transferred employees between various entities *without informing the division* in order to evade premium liability and failed to produce or permit the inspection or copying of records as required to determine status of employer accounts . . . .

(emphasis added).

ARI did not object to this line of questioning at the hearing, nor did it offer any countervailing proof at the hearing. Moreover, ARI did not request the Board of Review to reopen the proof on the notice issue when the Board reviewed the Appeals Tribunal's decision.[7]

As our Supreme Court has previously opined:

it is no less incumbent for a party to an administrative proceeding to raise issues of procedural irregularity than it is for a party in a judicial proceeding. The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors. Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable.

*Bailey v. Blount County Bd. of Educ.*, 303 S.W.3d 216, 237 (Tenn. 2010) (quoting *McClellan*, 921 S.W.2d at 690). An agency's full consideration of such procedural concerns "will assure that the responsible agency has a full opportunity to reach a considered decision on a complete record after a fair proceeding." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 455 (Tenn.1995).

Our review of the record shows that ARI did not avail itself of the opportunity to bring the asserted constitutional violation to the Board of Review's attention or to reopen the proof; as a consequence, its due process argument is deemed to be waived. *See Bailey*, 303 S.W.3d at 237 (Tenn. 2010).

We have also reviewed the record and find there is substantial and material evidence to support the finding that ARI failed to notify the Department of the repeated employee transfers between the various entities in violation of Tenn. Code Ann. § 50-7-403(b)(4). Accordingly, we affirm the finding of a violation of the statute.

## B. Statutory Authority

ARI argues that the Department imposed an "extra-statutory" remedy when it recalculated the amount of state unemployment taxes ARI owed. ARI specifically contends that the Department did not have authority to aggregate the accounts of the entities under Thomason's control when recalculating ARI's tax obligation.

---

[7] Pursuant to Tenn. Code Ann. § 50-7-304(e)(1), "The board of review may on its own motion affirm modify or set aside any decision . . . on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence, or may permit any of the parties to such decision to initiate further appeals before it."

In resolving this issue, we are mindful that, "[w]ith respect to an agency's interpretation of its own rules and regulations, courts afford deference and controlling weight to such determinations unless plainly erroneous or inconsistent with the regulation." *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (citing *Profill Dev., Inc. v. Dills*, 960 S.W.2d 17, 27 (Tenn. Ct. App. 1997) (citing *Jackson Express, Inc. v. State Public Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984)). A reviewing court should not "disturb a reasonable decision of any agency which has expertise, experience and knowledge in a particular field." *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991).

Tenn. Code Ann. § 50-7-602(a) empowers the Commissioner to administer and enforce Tenn. Code Ann. § 50-7-101 *et seq*. stating:

> It is the duty of the administrator to administer this chapter. The commissioner has the power and authority to adopt, amend or rescind rules and regulations, to employ persons, make expenditures, require reports, make investigations, and take other action the commissioner deems necessary or suitable to that end.

Under this authority, it was appropriate for the Department to commence an audit of ARI and ascertain the appropriate remedies for violations of Tenn. Code Ann. § 50-7-101 *et seq*.

In determining the amount of state unemployment taxes owed by ARI, the Department applied Tenn. Code Ann. § 50-7-403(b)(2)(A) and (5)(B) [8] which provided in relevant part, at that time:

> (2)(A) In the event of a successorship or merger of employers or employing units and the combined or successor employer is a new entity, the combined taxable payroll, benefit and premium experience of the employers or employing units involved shall be computed as of the effective date of successorship or merger to determine a new reserve ratio and premium rate applicable to the combined or successor employer. In the event that any employing unit subsequent to January 1, 1951, acquires or has acquired a distinct, severable, identifiable and segregable portion of the business of an employer and continues or has continued such an acquired portion of the business of the predecessor, the successor shall succeed to that part of the taxable payroll,

---

[8] ARI takes issue with the Board of Review's citation to Tenn. Code Ann. § 50-7-402 as the authority allowing the Department to aggregate multiple employer accounts and to recalculate ARI's appropriate tax rate. Tenn. Code Ann. § 50-7-402(a) references Tenn. Code Ann. § 50-7-403, which is the statute relied upon in the Redetermination Decision originally calculating the amount of tax owed. We have considered the entire statutory scheme in resolving this issue.

benefit, and premium experience of the predecessor which is attributable solely to that portion of the business which was acquired. . . .

. . .

(5)(B) Unless and until it has been shown to the satisfaction of the administrator that both the successor and the predecessor are not the same parties of interest, any successor, whether or not an employer at the time of acquisition, that is controlled either directly or indirectly by legally enforceable means or other wise by any individual, type of organization, or employing unit having a commonality of beneficial interest or interests as those of the predecessor will be considered the same party of interests as the predecessor and will acquire the experience rating factors of the predecessor employer. These factors consist of premiums paid, benefit experience, annual taxable payrolls of the predecessor employer, and any remaining liabilities. . . .

The record reflects that Mr. Thomason made various employee transfers that fell within the purview of the above mentioned statutes including the following:

- Between the 4th quarter of 2001 and the 1st quarter of 2002 approximately 800 employees were moved from Administrative Resources, Inc. to Human Resources Services.

- Between the 4th quarter of 2002 and the 1st quarter of 2003 approximately 800 employees were moved from Human Resources Services to ARI, Inc. (d/b/a Southgate Styling Salon).

- Between the 4th quarter of 2003 and the 1st quarter of 2004 approximately 800 employees were moved from ARI, Inc. (d/b/a Southgate Styling Salon) to ARI Payroll Transfers Div. and Staffing Solutions.

It is undisputed that all of the employer entities, listed above, were under the common ownership and control of Mr. Thomason at the time of the transfers. It is also undisputed that ARI's employee transfers resulted in an unemployment tax liability rate of .20% rather than a "new employer" rate.[9] The Department correctly construed and applied Tenn. Code Ann.

---

[9] Employers are considered "new employers" and pay at the new employer rate until they are eligible to be "experience rated." To qualify for an experience rating, an employer's account must have been chargeable with benefits and subject to premiums for 36 consecutive months. *See* Tenn. Code Ann. § 50-7-

(continued...)

§ 50-7-403(b)(2)(A) and (5)(B) to find that the transfers established a predecessor/successor relationship for the purpose of unemployment tax liability. Due to the fact that the entities were commonly owned by Mr. Thomason, the Department properly combined the premium rates for all of the entities involved into a single experience rate common to all of the entities to determine the appropriate amount of unpaid unemployment taxes owed by ARI. In sum, the Department's assessment of unpaid unemployment taxes was not in violation of statutory provisions or in excess of the statutory authority of the agency; therefore, we affirm the Department's recalculation of the unemployment premium liability of ARI.

## C. Evidence in Support of the Department's Assessment

ARI argues that the Redetermination Decision should be set aside because the Department "failed to provide any evidence to support the amount of back SUTA taxes ARI owes." In deciding this issue, the trial court stated:

> The recalculation is set out in Exhibit 3 to the Appeals Tribunal hearing and in the reconsideration opinion. No testimony at the hearing impeaches Exhibit 3, nor does it impeach the findings of the amount found in the reconsideration decision. Given the scope of review, the Court affirms this finding.

We agree with the trial court. The spreadsheet attached as Exhibit 3 sets out the taxable wages, premiums due, and interest due to each of the entities owned by Mr. Thomason. This documentation provides ARI with itemized details regarding how the Department arrived at the amount of unpaid unemployment premiums assessed. ARI asserts that the record "does not contain any evidence as to where the Department found these numbers nor does anything in the record reflect how the Department used any numbers in Exhibit 3 to calculate the amount that it claims ARI owes." ARI also contends that the Department failed to provide "a witness with firsthand knowledge of the methodology or calculations."

The question before this court is whether there is substantial and material evidence, in light of the entire record, in support of the Board of Review's decision; Exhibit 3 meets that standard. The Department has particular expertise, experience and knowledge in the calculation of unemployment taxes, to which we defer and afford controlling weight. *See Jones*, 94 S.W.3d 495. To the extent ARI wished to challenge the calculation of back taxes or Exhibit 3, it had its opportunity to do so.

---

[9](...continued)
403(f). Premium rates can be as low as 0.0% and as high as 10.0% depending on the employer.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court affirming the Department's assessment of unpaid unemployment taxes against ARI is affirmed.

_____
RICHARD H. DINKINS, JUDGE