FILED

10/23/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 9, 2025 Session

**STATE OF TENNESSEE v. JARVIS T. EMERSON**

**Appeal from the Circuit Court for Gibson County**
**No. 20673     Clayburn Peeples, Judge**

_____

**No. W2024-00968-CCA-R3-CD**

_____

Jarvis T. Emerson, Defendant, appeals from his convictions for attempted first degree murder, especially aggravated burglary, three counts of assault, two counts of employing a firearm during the commission of a dangerous felony, and two counts of felon in possession of a firearm. He received an effective sentence of fifty-five years. Defendant argues that: (1) the evidence was insufficient to support the convictions because the State failed to establish his identity; (2) the evidence was insufficient to support the assault charges because the proof did not show the victims reasonably feared imminent bodily injury; (3) the evidence was insufficient to show Defendant was previously convicted of a felony; (4) the conviction for especially aggravated burglary should be reduced to aggravated burglary because the State relied on serious bodily injury to prosecute both the attempted first degree murder and especially aggravated burglary convictions; (5) the trial court erred in ordering partial consecutive sentencing by failing to find the required *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995), factors; (6) the State failed to prove Defendant was a Range II, multiple offender; and (7) *Apprendi* mandates that the jury find beyond a reasonable doubt the serious bodily injury enhancement for attempted first degree murder and that this requirement makes the enhancement for attempted first degree murder the "functional equivalent of an element of a greater offense." After a thorough review, we determine that the evidence was sufficient to support the convictions and that serious bodily injury is not an element of attempted first degree murder, such that a prosecution for both attempted first degree murder and especially aggravated burglary are prohibited by statute. We also determine Defendant has waived any challenge under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and any challenge to his offender classification. However, we remand for a new sentencing hearing because the trial court failed to make the requisite findings before ordering partial consecutive sentencing. Accordingly, Defendant's convictions are affirmed, and the matter is remanded to the trial court for a hearing on the manner of service of the sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

W. Taylor Hughes, Alamo, Tennessee (at trial); Rachele Gibson, District Public Defender; Patrick Dollar, Assistant District Public Defender (on appeal); Mitchell A. Raines, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference, Franklin, Tennessee, for the appellant, Jarvis T. Emerson.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Frederick Agee, District Attorney General; and Nina Seiler and Scott G. Kirk, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Donna Counts was employed by the Trenton Police Department on November 22, 2021, as a dispatcher. A call came in a little before 3:18 a.m. to report a shooting. The caller, Dana Denwiddie,[1] identified Defendant as the shooter. After identifying Defendant by name, Ms. Denwiddie stated during the call that her "son's father just busted in the house" and "shot multiple times."

Thomas Buchanan, the victim, "used to talk" to Ms. Denwiddie. They were in a romantic relationship for "[a]bout six years." He did not know Defendant while he and Ms. Denwiddie were dating. Defendant "called [the victim's] phone one day out of the blue [in April of 2021] and said [Ms. Denwiddie] had gave [sic] him [the] number to call." During the call, Defendant asked the victim if he knew Ms. Denwiddie. He continued to contact the victim by calling "restricted" on a "texting app." The victim explained that he did not recognize the phone number any of the times Defendant called him. Defendant made monthly threats against the victim, so the victim tried unsuccessfully to block Defendant's number.[2] Defendant told the victim he was "going to find out where" he lived and where his mother lived. The victim saw Defendant once, "around October." The victim was driving his car. The victim was "stopped at the light" coming into Humboldt,

---

[1] Ms. Denwiddie's name is spelled both "Dinwiddie" and "Denwiddie" in the transcript. We will utilize the spelling from the transcript of the trial, in which it is spelled "Denwiddie."

[2] The victim explained that every time he blocked a number, Defendant would make "a new texting app" and get a "new number" and the victim would not recognize the new number.

- 2 -

and a car pulled up beside him. Defendant was in the car next to him and "pointed a gun" at the victim.

At the time of the shooting, the victim was living in Trenton on 10th Street. His children lived with him "every other weekend." His six-year-old son, three-year-old nephew, and an adult friend, Dentrill Wilkes, were staying at the house the night of the shooting. They slept in the living room, separated by one wall from the victim's bedroom.

Ms. Denwiddie contacted the victim via Snapchat and asked if she could come to the victim's house. She arrived at the house around one or two in the morning and went "back to the bedroom" with the victim to have sex. The victim fell asleep afterward. He awoke to "[a] boom" when his bedroom door got kicked in by Defendant. Ms. Denwiddie was still in bed with the victim. Defendant turned on the lights, "locked eyes" with the victim, "pointed the gun[,] and started shooting." The victim recalled being shot "more than five" times while lying in bed. The gun was only pointed at him. He eventually rolled out of bed, but Ms. Denwiddie stayed in bed, "sitting [in bed leaned up] on the wall." The victim "heard [Ms. Denwiddie] screaming [Defendant's] name, telling him to stop." The shots eventually stopped, and Defendant left the house. The other people were in the house in the living room about ten feet away when the shots were fired. The victim was taken by helicopter to a Memphis hospital, where he remained until February 12th. The victim suffered one gunshot wound to the neck, two wounds to the chest, one wound to the shoulder, one wound to the right elbow, one wound to the right wrist, one wound to the left wrist, one wound to the right thigh, one wound to the lower leg, one wound to the back, and one wound to the groin for a total of eleven gunshot wounds. Defendant contacted the victim after the shooting via the "texting app." The victim recalled that the text message said something like, "be happy, God was with you."

Officer Wyatt Butler of the Trenton Police Department responded to the scene at around 3:00 a.m. When he arrived, he entered through the carport. He crossed the utility room and passed the kitchen and entered a small bedroom, where he found the victim and Ms. Denwiddie. Another officer was already on the scene, rendering first aid to the victim. Officer Butler described Ms. Denwiddie as "frantic." Dentrill Wilkes and two small children were also present at the home. They were sleeping in the living room at the time of the shooting. The bodycam footage was admitted as an exhibit at trial.

Lieutenant James Wilson, a detective with the Trenton Police Department, arrived on the scene about twenty minutes after the 911 call. He entered the home through the carport and noticed damage to the exterior door of the home. Detective Wilson found a shell casing in the hallway outside the bedroom. Inside the small bedroom, measuring approximately ten feet by ten feet, there was a lot of blood on the bed and the floor. Twelve additional shell casings were found in the bedroom. All the casings were 9mm. Three

- 3 -

bullet fragments were also found in the bedroom—one was embedded in the wall and two were located on the mattress. Detective Wilson acknowledged that there was a mistake in the report with regard to the number of shell casings and bullet fragments found during the investigation. He explained that rather than correcting the initial report, he filed a supplemental report to correct the error.

Detective Wilson explained that, as soon as Defendant was identified as a suspect, authorities issued a be on the lookout, or "BOLO" for Defendant. The next day, warrants were issued for Defendant's arrest, and the U.S. Marshals Service was contacted to assist in apprehending Defendant. Officers went to Defendant's brother's house in Alamo, but Defendant was not there. Officers found and searched the interior of a 2004 Ford Escape that belonged to Defendant's brother. Officers learned Defendant had been driving the Ford Escape. Officers found a 9mm shell casing in the car. None of Defendant's belongings were found in the car.

Defendant was eventually apprehended in Kentucky about two weeks after the incident. He was hiding in a small attic space of a home. Detective Wilson explained that Defendant had a prior federal felony conviction for manufacture or possession with intent to distribute crack cocaine, for which he received a forty-five month sentence with thirty-six months of supervised release as well as a felony conviction out of Gibson County for "criminal responsibility for theft over a thousand."

Investigator Kelly Schwertberger of the Jackson Police Department was certified as an expert in forensic firearms and ballistics. She was able to determine that all fourteen shell casings found in this case (one in the hallway, twelve in the bedroom, and one in the Ford) were all fired from the same gun.

Ms. Denwiddie testified for Defendant. Ms. Denwiddie admitted that Defendant had been living with her off and on for the year before the incident at her home in Murfreesboro. She and Defendant had a child together. She explained that she was at the victim's house on the night of the incident. Ms. Denwiddie was at the house for about an hour before someone "came in, cut the lights on, and just started shooting." She admitted that after the incident, she identified Defendant as the shooter because of "past situations" between them and "text messages" from Defendant while she was with the victim, even admitting that she told police she was "a hundred thousand percent sure" it was Defendant. However, at trial, she testified she could not "say for sure" that "it was him." Ms. Denwiddie admitted that there was a pending case involving both her and Defendant in Rutherford County.

Ms. Denwiddie did not think Defendant knew she was at the victim's house that night. She thought there was a gun at the victim's house but did not see a gun that night.

- 4 -

She remembered waking up when the light came on and remembered that multiple gunshots were fired. She explained that she somehow ended up off the bed on the floor and that the shooter pointed the gun at her before he left. The shooter was wearing a black hoodie. At trial, Ms. Denwiddie could not provide any further description of the shooter. She admitted that she consumed alcohol and took prescription pain medication prior to going to sleep. Ms. Denwiddie disagreed that Defendant knew she was at the victim's house but admitted that Defendant sent her "eye emojis" shortly before the shooting. Ms. Denwiddie admitted that she saw Defendant driving his brother's Ford Escape the weekend of the shooting and saw him in his brother's vehicle after she dropped Defendant off at his brother's house.

Defendant was indicted in an eleven-count indictment for attempted first degree murder, especially aggravated burglary, three counts of aggravated assault, four counts of employing a firearm during the commission of a dangerous felony, and two counts of employing a firearm during the commission of a dangerous felony.[3]

After the denial of a motion for judgment of acquittal, the parties made closing statements, and the trial court instructed the jury. The jury found Defendant guilty of attempted first degree murder in Count 1, especially aggravated burglary in Count 2, three counts of the lesser included offense of assault in Counts 3, 4, and 5, and two counts of employing a firearm during the commission of a dangerous felony, in Counts 6 and 7. After a bifurcated hearing, the jury found Defendant guilty of possession of a firearm with a prior felony drug offense in Count 8 and possession of a firearm by a convicted felon in Count 9. The trial court sentenced Defendant to an effective sentence of fifty-five years, ordering partially consecutive sentencing. The trial court denied the motion for new trial, and Defendant timely appealed.

*Analysis*

*Sufficiency of the Evidence*

Defendant raises several issues on appeal related to the sufficiency of the evidence. Defendant first argues that there was insufficient evidence to establish his identity as the

---

[3] Defendant was initially indicted in an eleven-count indictment for four counts of use of a firearm during the commission of a dangerous felony, one count of possession of a firearm with a felony drug conviction, and one count of possession of a firearm with a felony theft conviction. The State elected not to proceed with two charges at the beginning of the trial, originally numbered Count 7 (employing a firearm during the commission of a dangerous felony-to wit, first degree murder, predicated on the felony theft of property) and Count 9 (employing a firearm during the commission of a dangerous felony-to wit, especially aggravated burglary, predicated on the felony theft of property). The indictment was reissued and the counts were renumbered 1-9.

perpetrator. Defendant also insists that the evidence did not support the convictions for assault. Defendant complains that the evidence did not prove that he was previously convicted of a felony. Lastly, Defendant argues that the trial court erred "when it affirmed [his] conviction for especially aggravated burglary because the jury had also convicted [him] of attempted first degree murder resulting in serious bodily injury." The State insists that Defendant's arguments are all "without merit."

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## *A. Identity*

Defendant first argues that the evidence was not sufficient to establish his identity as the person who broke into the victim's home and fired multiple shots. The State posits that the proof "overwhelmingly" established his identity as the shooter.

Identity is an essential element of every crime. *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015). The State has the burden to prove the identity of the defendant. *State v. Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995). The identification of the perpetrator of a crime is a question of fact for the jury. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005), *abrogated on other grounds by State v. Miller*, 638 S.W.3d 136, 150 (Tenn. 2021). In resolving questions of fact, such as the identity of the perpetrator, "'the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)). Circumstantial evidence may

establish identity. *Bell*, 512 S.W.3d at 198-99 (concluding circumstantial evidence that the defendant was the perpetrator was sufficient to uphold the verdict).

At trial, the victim identified Defendant as the shooter, stating that when the lights came on in the bedroom, he "locked eyes" with Defendant. Ms. Denwiddie testified that Defendant was the father of her child, and she repeatedly identified him as the shooter in the moments after the incident. She identified him on the 911 call and told officers she was a "thousand percent sure" it was Defendant. Ms. Denwiddie received text messages of eye emojis from Defendant immediately prior to and after the shooting, indicating he was watching her. Officers also located a bullet casing fired from the same gun as the gun used at the victim's home in the car associated with Defendant. While Ms. Denwiddie was equivocal in her testimony at trial, refusing to confirm that Defendant was the perpetrator, the jury heard the testimony, listened to all the proof, and resolved those conflicts in the favor of the State. We will not reweigh the evidence. *Bland*, 958 S.W.2d at 659. The evidence was sufficient to conclude Defendant was the shooter. Defendant is not entitled to relief on this issue.

### B. Assault

Next, Defendant argues that the evidence was insufficient to support the three convictions for the lesser included offense of simple assault in Counts 3-5 because the State failed to "elicit any testimony showing that either [minor child] or [Mr.] Wilkes feared bodily injury." The State disagrees, arguing that proof that the victims testified they feared bodily injury is unnecessary, and that the proof is sufficient to support the assault convictions.

In order to sustain a conviction for assault, the State had to show that Defendant intentionally or knowingly caused the victims to reasonably fear imminent bodily injury. T.C.A. § 39-13-101(a)(2). When a conviction for assault is based on fear, the victim must have a "well-grounded apprehension of personal injury or violence." *State v. Jones*, 789 S.W.2d 545, 550-51 (Tenn. 1990). "An assault has been defined as an act which conveys to the mind of the person set upon a well[-]grounded apprehension of personal injury or violence." *State v. Jones*, 789 S.W.2d 545, 550-551 (Tenn. 1990). Fear, "may be inferred from the circumstances surrounding the offense." *State v. Whited*, No. M2005-00167-CCA-R3-CD, 2006 WL 548228, at *12 (Tenn. Crim. App. Mar. 7, 2006), *perm. app. denied* (Tenn. Aug. 28, 2006). "The element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury." *State v. Whitfield*, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998) (citing *State v. Pittman*, No. 03C01-9701-CR-00013, 1998 WL 128801, at *5 (Tenn. Crim. App. Mar. 24, 1998)), *perm. app. denied* (Tenn. Dec. 7, 1998). Even though a victim does not testify

about being afraid, there can still be sufficient evidence to sustain a conviction for assault. *Whited*, 2006 WL 548228, at *11-12 (citing *State v. Schrantz*, No. W2002-01507-CCA-R3-CD, 2003 WL 22888910 (Tenn. Crim. App. Dec. 2, 2003) (determining that although victim denied being placed in fear, victim's fear of imminent bodily injury could be inferred from circumstances, including witness descriptions that victim was crying and acting scared)); *State v. Jamieson*, No. W2003-02666-CCA-R3-CD, 2004 WL 2996910 (Tenn. Crim. App. Dec. 23, 2004) (concluding that even though victims did not testify at trial, evidence was sufficient for jury to infer victims were in fear based on testimony of other witnesses); *State v. Austin*, No. W2001-00120-CCA-R3-CD, 2002 WL 32755555 (Tenn. Crim. App. Jan. 25, 2002) (affirming finding of fear from circumstances of the offense even where the victim did not testify at trial); *State v. Adams*, No. M1998-00468-CCA-R3-CD, 1999 WL 1179580 (Tenn. Crim. App. Dec. 15, 1999) ( holding that where defendant's actions were directed toward another and victim did not testify she was afraid, fear could be inferred from circumstances in which defendant wielded deadly weapon toward another in victim's immediate presence).

Defendant concedes that fear can be inferred from the circumstances of the offense in the absence of testimony from the victims but argues that there was "was no evidence that the victims were even aware of [Defendant's] actions."  In our view, this is akin to a risk of danger argument, which the Tennessee Supreme Court has specifically declined to apply in assault offenses.  *State v. Moore*, 77 S.W.3d 132, 135-36 (Tenn. 2002) (holding assault cases do not require the victim to show that he or she was in a "risk of danger").  Instead, the proper inquiry is whether the victims had a reasonable fear of imminent bodily injury.

The proof at trial established that the victim's six-year-old son, three-year-old nephew, and an adult friend were staying in the living room of the house, roughly "ten feet" away from the bedroom where Defendant fired more than a dozen shots at the victim.  There was a single wall separating the two rooms.  When officers arrived on the scene, the adult, Mr. Wilkes, told officers he was "sleeping and woke up to gunshots."  In our view, a rational jury could reasonably conclude that any individual ten feet away from continuous gunfire would fear imminent bodily injury.  Defendant is not entitled to relief on this issue.

### C. Prior Felony Conviction

Defendant next argues that the State failed to prove he had previously been convicted of a felony for Counts 6 and 7, so the evidence was insufficient to support those convictions.  He claims that a rational juror could not conclude his federal cocaine conviction was a felony where the judgment did not "state the conviction was for a felony offense."  The State argues that Defendant heard proof that Defendant had a federal conviction that constituted a felony during the first portion of the bifurcated trial.

Moreover, when the State reintroduced the judgment of that conviction, the jury was permitted to rely on the judgment and the prior testimony to conclude that the offense was a felony.

Defendant was convicted in Counts 6 and 7 of a violation of Tennessee Code Annotated section 39-17-1324(b), making it an offense to "employ a firearm" during the commission of or attempt to commit a dangerous felony. A dangerous felony is defined in section 39-17-1324(i)(1) to include both first degree murder and especially aggravated burglary. A violation of subsection (b) is a Class C felony, punishable by a mandatory minimum ten-year sentence if the defendant, at the time of the offense, had a prior felony conviction. *Id.* at (h)(2). A "prior conviction" means the person "serves and is released or discharged from, or is serving, a separate period of incarceration or supervision for the commission of a dangerous felony prior to or at the time of committing a dangerous felony . . . ." *Id.* at 2(A). "A felony involving the sale, manufacture, distribution, or possession with intent to sell, manufacture, or distribute a controlled substance or controlled substance analogue, . . ." is a dangerous felony. *Id.* at (i)(1)(AA).

Here, during the testimony of Detective Wilson during the State's case in chief, proof was introduced that Defendant had a prior federal felony conviction for manufacture or possession with intent to distribute crack cocaine, for which he received a forty-five month sentence with thirty-six months of supervised release, as well as a felony conviction out of Gibson County for "criminal responsibility for theft over a thousand." Defendant initially objected to this testimony, but after a bench conference, which was not recorded and not part of the record, the trial court allowed the testimony and admitted a copy of the judgment form into evidence. During the bifurcated hearing, the trial court gave the jury supplemental instructions as follows:

> You have now determined that the defendant is guilty of unlawful employment of a firearm during [the] commission of or attempt to commit attempted murder in the first degree that's charged in Count 6 and that he is guilty of unlawful employment of a firearm during [the] commission of [or] attempt to commit especially aggravated burglary in Count 7.

> It will now be your duty to determine as to both counts whether or not the defendant has a prior conviction for a felony involving the sale, manufacture, distribution, or possession with intent to sell, manufacture, or distribute a controlled substance, that being cocaine.

> Any record of prior convictions of the defendant is evidence which you may consider. A judgment of conviction of any person under the same name as that of the defendant may create an inference that the identity of such person

- 9 -

is the same as the defendant. However, the jury is not required to make this inference. . . .

"Prior conviction" means that the defendant has served and was released or discharged from or is serving a separate period of incarceration or supervision for the commission of a felony involving the sale, manufacture, distribution, or possession with intent to sell, manufacture, or distribute a controlled substance, that being cocaine, prior to committing the offense for which the jury has found the defendant guilty in both Counts 6 and 7 of the indictment. . . .

After the trial court gave the additional instruction, the State introduced "the certified copies of the felonies just as exhibits." Defendant did not object to the introduction of the certified copy of the judgment of conviction indicating Defendant had a conviction for "manufacture, possess with intent to distribute, and attempt to distribute cocaine; aiding and abetting." Under these circumstances, Defendant has waived any challenge to his offender classification based on his foreign conviction. "A defendant cannot both affirmatively agree to a particular sentencing outcome and later disown the result when the court accepts the agreement." *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at * (Tenn. Crim. App. May 6, 2025) (citing *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) ("Indeed, it is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error[.]")), *no perm. app. filed*. Defendant "invit[ed] the court to do the very thing of which he now complain[s]," and we decline to provide him the relief he seeks. *State v. Sutton*, No. 03C01-9708-CC-00344, 1998 WL 126250, at *3 (Tenn. Crim. App. Mar. 23, 1998), *perm. app. denied* (Tenn. Nov. 2, 1998). In any event, regardless of whether Defendant was sentenced in federal court for a felony or a misdemeanor, he received a punishment of imprisonment for one year or more. *See* T.C.A. 39-11-110 (stating "[a]ll violations of law that may be punished by one (1) year or more of confinement . . . are denominated felonies."). Therefore, Defendant's prior conviction is considered a felony drug offense under Tennessee law. *State v. Smith*, 495 S.W.3d 271, 275 (Tenn. Crim. App. 2016).

### D. Serious Bodily Injury

As part of his challenge to the sufficiency of the evidence, Defendant argues that the trial court erred by failing to amend Defendant's conviction for especially aggravated burglary to aggravated burglary. Specifically, Defendant argues that he "cannot be convicted of especially aggravated burglary based on serious bodily injury when the bodily

injury enhancement factor also applies to another offense or conviction [here attempted first degree murder]." Defendant relies on *State v. Tolbert*, 507 S.W.3d 197, 214 (Tenn. Crim. App. 2016), to support his argument. In his reply brief, Defendant couches his argument as an *Apprendi* issue, insisting that the jury had to find beyond a reasonable doubt that the victim suffered serious bodily injury and that the serious bodily injury enhancement to his attempted first degree murder conviction is the "functional equivalent" of an element, so this Court "must amend" the conviction for especially aggravated burglary to aggravated burglary pursuant to Tennessee Code Annotated section 39-13-1004(d). The State disagrees, noting that serious bodily injury is a sentencing enhancement to Defendant's attempted first degree murder conviction, not an element, and was not used to prosecute Defendant of attempted first degree murder and thus, has no impact on the underlying conviction. For the reasons that follow, we agree with the State.

To begin our analysis of this issue, we must review the elements of the offenses about which Defendant complains. At the time of Defendant's conviction,[4] especially aggravated burglary was defined as:

> (1) Burglary, as described in § 39-13-1002, of a habitation or building other than a habitation; and
> (2) Where the victim suffers serious bodily injury.
> (b) For the purposes of this section, "victim" means any person lawfully on the premises.
> (c) Especially aggravated burglary is a Class B felony.
> (d) *Acts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both*.

T.C.A. § 39-13-1004 (emphasis added). In order to convict Defendant of attempted first degree murder with serious bodily injury, the State had to prove that Defendant acted "with the kind of culpability otherwise required for the offense . . . [and] [a]ct[ed] with intent to cause a result that is an element of the offense, and believe[d] the conduct w[ould] cause the result without further conduct on the person's part[.]" T.C.A. § 39-12-101(a)(2). Relevant to this case, first degree murder is the unlawful, intentional, and premeditated killing of another. T.C.A. § 39-13-202(a)(1). When a victim of attempted first degree murder suffers serious bodily injury as a result of the crime, a defendant must serve a minimum of 85% of his sentence. T.C.A. § 40-35-501(k)(5) (stating there "shall" be "no release eligibility for a person committing attempted first degree murder . . . where the

---

[4] At the time this Court decided *Tolbert*, the case primarily relied on by Defendant, especially aggravated burglary was found at Tennessee Code Annotated section 39-14-404. On July 21, 2021, the Tennessee Legislature moved burglary and its enhancements from the offenses against property section of the Tennessee Code to the section governing offenses against the person. 2021 Pub. Acts, c. 545, § 2, eff. July 1, 2021. There were no substantive changes made to the language of the statute.

victim suffers serious bodily injury . . . , on or after July 1, 2013, and before July 1, 2022, until the person has served eighty-five percent (85%) of the sentence imposed . . . .”). "Serious bodily injury" includes bodily injury that involves: "(A) a substantial risk of death; (B) protracted unconsciousness; (C) extreme physical pain; (D) protracted or obvious disfigurement; or (E) protracted loss or substantial impairment of function of a bodily member, organ or mental faculty." T.C.A. § 39-11-106(a)(36). According to Tennessee Code Annotated section 39-11-106(a)(3) "bodily injury" includes a "cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." This Court has held that the subjective nature of pain is a fact to be determined by the trier of fact. *State v. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. Feb. 23, 2006), *no perm. app. filed*.

In *Tolbert*, the case relied on by Defendant, the defendant argued that his two convictions for especially aggravated burglary should be reduced to aggravated burglary because the aggravated burglary statute prohibits more than one conviction when the convictions are based on the same conduct. The defendant in *Tolbert* argued that the serious bodily injury element was used to sustain the convictions for especially aggravated burglary, three counts of felony murder, and one count of first degree murder for one victim, and to sustain convictions for especially aggravated burglary and especially aggravated robbery as to a second victim. This Court noted that the killing of one victim (obviously enough to warrant a finding of serious bodily injury) "was the basis for the murder convictions in Counts 1, 2, 3, and 4, and the serious bodily injury element of Count 6, especially aggravated burglary" and that the "stabbing [of the other victim] was the basis for the serious bodily injury elements of the especially aggravated robbery and the especially aggravated burglary convictions." *Id.* at 214. Because serious bodily injury was an element of more than one offense, this Court reduced the defendant's two especially aggravated burglary convictions to aggravated burglary. In a reply brief, Defendant cites *State v. Holland*, 860 S.W.2d 53, 56 (Tenn. Crim. App. 1993), as additional support for his argument. In *Holland*, the defendant was convicted of aggravated rape and especially aggravated burglary after breaking into the victim's home and brutally raping her. *Id.* at 56. After finding the evidence sufficient to support the especially aggravated burglary, this Court sua sponte reduced the conviction to aggravated burglary, not because the evidence was insufficient to support the *element* of serious bodily injury, as the defendant suggested, but because the "same act" or *element* of serious bodily injury was used to support the convictions for both especially aggravated burglary and aggravated rape. *Id.* at 60 (citing T.C.A. § 39-14-404(d) now numbered as § 39-13-1004(d)).

We find Defendant's reliance on *Tolbert* and *Holland* to be misplaced and find it more appropriate to review the issue by first determining what the statutes require. As we have often quoted, "[t]he most basic principle of statutory construction is to ascertain and

give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *State v. Howard*, 504 S.W.3d 260, 269 (Tenn. 2016) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). When this Court is tasked with construing statutes, Tennessee law provides that we are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016). As the Tennessee Supreme Court recently explained:

> This Court's role in statutory interpretation is "to determine what a statute means." *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 175 (Tenn. 2008). Specifically, we must decide "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 33 (2012). Original public meaning is discerned through consideration of the statutory text in light of "well-established canons of statutory construction." *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008); *see also Kisor v. Wilkie*, [588 U.S. 558] (2019) (Gorsuch, J., concurring in the judgment) (noting that judges have employed "traditional tools of interpretation . . . for centuries to elucidate the law's original public meaning").
>
> We give the words of a statute their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). In the absence of statutory definitions, we look to authoritative dictionaries published around the time of a statute's enactment. *State v. Edmondson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007).
>
> We consider the whole text of a statute and interpret each word "so that no part will be inoperative, superfluous, void or insignificant." *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 228 (Tenn. 2010) (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)). We also consider "[t]he overall statutory framework." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 846 (Tenn. 2019). "[S]tatutes 'in pari materia'—those relating

- 13 -

to the same subject or having a common purpose—are to be construed together . . . ." *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994).

. . . .

When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we "enforce the statute as written." *Johnson v. Hopkins*, 432 S.W.3d [840,] 848 [Tenn. 2013]. But when a penal statute remains "grievous[ly] ambigu[ous] or uncertain[ ]," *Huddleston v. United States*, 415 U.S. 814, 831, 94 S. Ct. 1262, 39 L. Ed. 2d 782 (1974), the rule of lenity operates as a "tie-breaker" and requires us to resolve the ambiguity in the defendant's favor, *State v. Welch*, 595 S.W.3d 615, 623 n.4 (Tenn. 2020) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)).

*State v. Deberry*, 651 S.W.3d 918, 924-25 (Tenn. 2022).

Here, Defendant argues that he cannot be convicted of both attempted first degree murder and especially aggravated burglary because serious bodily injury cannot be used to "prosecute" Defendant of both offenses. T.C.A. § 39-13-1004(d). Of course, "[a] criminal conviction cannot stand unless the State proves every statutory element of the charged offense beyond a reasonable doubt." *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). According to Black's Law Dictionary, "elements of crime" refers to "each component of the actus reus, causation, the mens rea, any grading factors, and the negative of any defense." Black's Law Dictionary (12th ed. 2024). To "prosecute" means to "institute and pursue a criminal action" against a person. *Id.* Here, we do not have a scenario where Defendant was charged with, prosecuted for, and convicted of multiple offenses requiring the State to prove serious bodily injury as element of the crime. Simply put, serious bodily injury is not an element of attempted first degree murder, and multiple cases conclude as such. *See, e.g., State v. Baxter*, No. M2023-01507-CCA-R3-CD, 2025 WL 798146, at *6 (Tenn. Crim. App. Mar. 13, 2025) (noting that serious bodily injury is not an element of attempted first degree murder), *no perm. app. filed*; *State v. Bevis*, No. W2022-01740-CCA-R3-CD, 2024 WL 752878, at *11 (Tenn. Crim. App. Feb. 23, 2024) (holding that serious bodily injury is not an element of attempted first degree murder), *perm. app. denied* (Tenn. Oct. 25, 2024); *Rogers v. State*, No. W2022-00019-CCA-R3-PC, 2022 WL 6957427, at *8 (Tenn. Crim. App. Oct. 12, 2022) (noting that serious bodily injury is not an element of attempted first degree murder but "must be put before the jury for sentencing purposes" when the charge is attempted first degree murder resulting in serious bodily injury), *perm. app. denied* (Tenn. Feb. 9, 2023); *State v. Fouse*, No. W2021-00380-CCA-R3-CD, 2022 WL 6257349, at *5 (Tenn. Crim. App. Oct. 10, 2022) (acknowledging that serious bodily injury is not an element of attempted first degree murder), *no perm. app. filed*; *State v. Vaughn*, No. W2016-00131-CCA-R3-CD, 2016 WL 7102748, at *6 (Tenn.

- 14 -

Crim. App. Dec. 6, 2016) (observing serious bodily injury is not an element of attempted first degree murder), *appeal granted, cause remanded* (Tenn. Nov. 17, 2017). Lending support to the conclusions in these cases, the words "serious bodily injury" are not found in either the attempt or the first degree murder statutes. *See* T.C.A. §§ 39-12-101, 39-13-202. Instead, in an attempted first degree murder prosecution, a finding of serious bodily injury affects how the crime is punished.[5] In other words, a finding of serious bodily injury affects how a defendant convicted of attempted first degree murder is sentenced, not how attempted first degree murder is prosecuted. Indeed, the statute providing the release eligibility for a conviction for attempted first degree murder "where the victim suffers serious bodily injury" appears in Title 40, Chapter 35, Part 5 of the Tennessee Criminal Sentencing Reform Act, entitled "Release and Parole." T.C.A. § 40-35-501(k)(5). The particular statute itself is entitled "Eligibility; calculations." *Id.* The comments of the Tennessee Sentencing Commission at the conclusion of the statute indicate that the section "governs the percentages a defendant must serve prior to becoming eligible for release classification status in all ranges." *Id.* Sentencing Comm'n Cmts. Thus, the sentencing enhancement on the conviction for first degree murder herein has no impact on Defendant's prosecution or conviction for especially aggravated burglary because no act "which constitute[s] an offense under this section" was used to prosecute Defendant of some other offense as prohibited by the statute. T.C.A. § 39-13-1004. Defendant's argument conflates "element" with "release eligibility." Defendant is not entitled to relief on this issue.

To the extent Defendant argues *Apprendi* mandates that the jury find beyond a reasonable doubt the serious bodily injury enhancement for attempted first degree murder, and this requirement makes the enhancement for attempted first degree murder the "functional equivalent of an element of a greater offense," we find this issue waived. Defendant argues on appeal that, pursuant to *Apprendi*, the Sixth Amendment prohibits enhanced sentences based on any fact not submitted to a jury and proved beyond a reasonable doubt. However, Defendant failed to raise this constitutional challenge to his sentences at the sentencing hearing, his motion for new trial, or his principal brief on appeal. He raised the issue for the first time in a reply brief. As such, we find this issue is

---

[5] At the time of Defendant's conviction, the fact of serious bodily injury affected the release eligibility for a person convicted of attempted first degree murder. Thus, "when a victim of attempted first-degree murder suffer[ed] serious bodily injury as a result of the crime, a defendant [was] not eligible for release until he serve[d] 85% of his sentence." *State v. Brakefield*, No. W2023-00766-CCA-R3-CD, 2024 WL 1739263, at *4 n.3 (Tenn. Crim. App. Apr. 23, 2024), *no perm. app. filed*; T.C.A. § 40-35-501(k)(5). By contrast, a person convicted of attempted first degree murder under current law is not eligible for release, irrespective of whether the victim suffers serious bodily injury. *See* T.C.A. § 40-35-501(b)(1), (2)(A) (providing that a person convicted of attempted first degree murder "shall serve one hundred percent (100%) of the sentence imposed by the court undiminished by any sentence reduction credits the person may be eligible for or earn").

waived. *State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) (stating that issues raised on appeal for the first time are generally waived); Tenn. R. App. 36(a).

*Sentencing*

Lastly, with regard to sentencing, Defendant argues that the trial court erred in ordering consecutive sentencing without making the required findings under *Wilkerson*. Defendant also argues that the trial court improperly classified him as a Range II offender for Counts 2 and 6-9 because it "failed to perform the requisite foreign convictions analysis" for his prior federal conviction. Defendant does not challenge the length of his individual sentences. The State concedes that the trial court failed to make the requisite findings to support consecutive sentencing but urges this Court to conduct a de novo review. Moreover, the State insists Defendant has waived any challenge to his offender classification because he "explicitly agreed to it."

At the sentencing hearing, Defendant's mother testified that Defendant had three children and that he was "crazy" about them. She described their family as "tight-knit." The State argued that Defendant had an extensive record of criminal history and that he was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The State also argued that the offense involved more than one victim. Defendant argued in mitigation that he acted under strong provocation and that he took care of his children. Defendant also argued that some of the firearms convictions should merge.

The trial court found with regard to "Count 1 Factor 1 applies." The trial court further commented that "Factor 3" and "Factor 10" apply to all counts. The trial court declined to mitigate the sentence based on provocation. The trial court did not "think that anything less than 25 years would be appropriate" on Count 1, and sentenced Defendant to twenty-five years for the conviction for attempted first degree murder. "[G]iven [Defendant's] intention when he went in and given his actions when he went in — given the repercussions of what he did," the trial court sentenced Defendant to twenty years for the especially aggravated burglary conviction. The trial court sentenced Defendant to eleven months and twenty-nine days on each of the three assault convictions. The trial court sentenced Defendant to a ten-year sentence, to be served by operation of law consecutive to the sentence for attempted first degree murder for the conviction for employing a firearm during the commission of a dangerous felony with a prior felony conviction in Count 6, and a ten-year sentence, to be served mandatorily consecutive to the sentence for especially aggravated burglary for the conviction for employing a firearm during the commission of a dangerous felony with a prior felony conviction in Count 7. The trial court sentenced Defendant to ten years for the conviction for possession of a firearm after a felony drug conviction in Count 8 and sentenced Defendant to four years at

eighty-five percent for possession of a firearm after a felony theft conviction in Count 9. The trial court merged Count 9 with Count 8 and ordered the sentences to run concurrently with the sentence in Count 6 and consecutively with the sentences for attempted first degree murder, especially aggravated burglary, and assault in Counts 1-5. The trial court commented that Defendant had a criminal history that was "concerning" but did not think it was "extensive" for purposes of the statute. The trial court further commented that "[D]efendant's actions in this case combined with his history does show that he's a dangerous offender whose behavior indicates little or no regard for human life. No hesitation about committing a crime in which the risk to human life is – is high."

At the conclusion of the sentencing hearing, the trial court ordered the sentence in Count 1 (attempted first degree murder) to run consecutively to the sentences in Counts 2 (especially aggravated burglary), 6 (use of a firearm during a felony), 7 (use of a firearm during a felony, and 8 (possession of a firearm after being convicted of a felony) but concurrently with the sentences in Counts 3, 4, and 5 (assault). The trial court ordered the sentence in Count 2 to run consecutively to the sentences in Counts 1, 6, 7, and 8 but concurrently with the sentences in Counts 3, 4, and 5. The trial court ordered the sentences in Counts 3, 4, and 5 to run concurrently with the sentence in Count 1. The trial court ordered the sentence in Count 6 to run concurrently with the sentences in Counts 7 and 8 and consecutively to the sentences in Counts 1, 2, 3, 4, and 5. The trial court ordered the sentence in Count 7 to run concurrently with the sentences in Counts 6 and 8 and consecutively to the sentences in Counts 1, 2, 3, 4, and 5. The trial court ordered the sentence in Count 8 to run concurrently with the sentence in Count 6 and consecutively to the sentences in Counts 1, 2, 3, 4, and 5. The trial court merged Count 9 (possession of a firearm after being convicted of a felony) with Count 8, for a total effective sentence of fifty-five years.

This Court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). The trial court is granted broad discretion to impose a sentence anywhere within the applicable range and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

In determining a defendant's sentence, the trial court is to consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors; (6) any statistical information provided by the Administrative Office of the Courts as to

sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98.

The record reflects that the trial court considered the principles set forth in Tennessee Code Annotated sections 40-35-102 and 103. The trial court also considered the evidence at trial and at the sentencing hearing, the presentence report, arguments by counsel, nature and characteristics of the criminal conduct involved, evidence offered by the parties on both enhancement factors and mitigating factors, statistical evidence provided by the Administrative Office of the Courts, any statements made by Defendant, and the validated needs and risk assessment. As a result, the court's determinations are afforded a presumption of reasonableness. Moreover, Defendant does not challenge the length of his sentences, only the trial court's decision to order consecutive sentencing.

With regard to consecutive sentencing, our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013). In other words, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.")); *see also Bise*, 380 S.W.3d at 705.

In this case, the trial court determined consecutive sentences were necessary because Defendant was a dangerous offender. "Any one of these grounds [in Tennessee Code Annotated section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). However, when consecutive sentencing is imposed based upon the dangerous offender classification, *see* T.C.A. § 40-35-115(b)(4), the record must also demonstrate that the total sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts" by the defendant. *Pollard*, 432 S.W.3d at 863; *see also Wilkerson*, 905 S.W.2d at 939. "The need for the additional findings before imposing consecutive sentencing on the basis of the 'dangerous

offender' provision arises, in part, from the fact that this category 'is the most subjective and hardest to apply.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999)).

As argued by Defendant and conceded by the State, the trial court did not make the requisite *Wilkerson* findings to support its determination that Defendant is a dangerous offender. *Pollard*, 432 S.W.3d at 863 ("[W]hen trial courts fail to include the two additional findings before classifying a defendant as a dangerous offender, they have failed to adequately provide reasons on the record to support the imposition of consecutive sentences."). Accordingly, this Court cannot defer to the trial court's exercise of discretion nor presume that the imposition of consecutive sentences was reasonable. *See State v. Carpenter*, No. W2019-01362-CCA-R3-CD, 2020 WL 7040983, at *8 (Tenn. Crim. App. Nov. 30, 2020); *State v. Robinson*, No. W2019-00216-CCA-R3-CD, 2019 WL 6876778, at *7 (Tenn. Crim. App. Dec. 16, 2019). The State urges this Court to perform a de novo review and affirm the trial court's order of consecutive sentencing.

In *Pollard*, our supreme court explained that, when facing this situation, this Court has two options: "(1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." *Pollard*, 432 S.W.3d at 864 (citing *Bise*, 380 S.W.3d at 705 & n.41). Because the consideration required under *Wilkerson* involves a fact-intensive inquiry, the better course is to remand the case to the trial court to determine the propriety of consecutive sentencing. *Id.* Accordingly, we vacate the imposition of partial consecutive sentencing and remand to the trial court for a hearing limited to consideration of the *Wilkerson* factors to determine the propriety of consecutive sentencing in this case.

Lastly, to the extent Defendant challenges his classification as a Range II, multiple offender, we determine Defendant waived any challenge to his classification by repeatedly agreeing to the classification. *Garrens,* 2025 WL 1307696, at *8 ("A defendant cannot both affirmatively agree to a particular sentencing outcome and later disown the result when the court accepts the agreement."); *State v. Gordon*, No. W2021-01190-CCA-R3-CD, 2023 WL 2375707, at *3 (Tenn. Crim. App. Mar. 7, 2023) (listing cases), *no perm. app. filed*. To the extent Defendant's passing request to "reverse and remand . . . under plain error review" is a request for this Court to review the issue for plain error, we decline to do so. *See State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007) ("It is the accused's burden to persuade an appellate court that the trial court committed plain error."); *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023) ("Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief."). Defendant is not entitled to plain error relief on this issue.

*Conclusion*

For the foregoing reasons, we affirm Defendant's convictions and the length of his individual sentences. However, we vacate the imposition of consecutive sentencing and remand to the trial court for further proceedings consistent with this opinion.


*S/Timothy L. Easter*
TIMOTHY L. EASTER, JUDGE